LAFAYETTE & KUMAGAI LLP
GARY T. LAFAYETTE (State Bar No. 088666)
Email: glafayette@lkclaw.com
BRIAN H. CHUN (SBN 215417)
Email: bchun@lkclaw.com
1300 Clay Street, Suite 810
Oakland, California 94612
Telephone:    (415) 357-4600
Facsimile:     (415) 357-4605

Attorneys for Defendants
COUNTY OF ALAMEDA and LORI COX

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA SOUBLET (aka SLYVIA MYLES),<br><br>            Plaintiff,<br><br>vs.<br><br>COUNTY OF ALAMEDA and LORI COX, in her Official and Individual Capacity, and DOES 1-50 inclusive.<br><br>            Defendants. | Case No. 18-cv-03738-JST<br><br>**DEFENDANTS COUNTY OF ALAMEDA AND LORI COX'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:            October 23, 2019<br>Time:           2:00 p.m.<br>Courtroom:   Courtroom 6, 2nd Floor<br>Judge:          Hon. Jon S. Tigar<br><br>Action Filed: June 22, 2018<br>Trial Date:  March 16, 2020 |

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

# **TABLE OF CONTENTS**

Page No.

NOTICE OF MOTION AND MOTION ................................................................................... 1

STATEMENT OF RELIEF SOUGHT ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.     STATEMENT OF ISSUES ................................................................................... 1

II.    INTRODUCTION ................................................................................................ 2

III.   STATEMENT OF FACTS ...................................................................................... 4

    A.   Plaintiff's Relationship With Cox. ............................................................ 4

    B.   The January 18, 2018 Letter of Reprimand. ............................................ 5

    C.   The Alleged Actions Taken *Before* Plaintiff's April 22, 2017
        Complaint. ................................................................................................ 7

        1.   Plaintiff's Application to Have Her Position Reclassified. ............ 7

        2.   Plaintiff's Desire to Have a New Position In A Higher
            Classification Created Specifically for Her. ................................ 8

        3.   Plaintiff's Frustration With Cox's Management Style. ................ 8

        4.   Plaintiff's Repeated Failure To Notify Cox of Her
            Whereabouts During Working Hours .......................................... 9

            a)   The October 10, 2016 Conference ................................... 9

            b)   The March 24, 2017 Conference ..................................... 9

            c)   The April 5, 2017 Conference ....................................... 10

IV.   LEGAL ANALYSIS ........................................................................................... 11

    A.   Summary Judgment Standard ................................................................. 11

    B.   Plaintiff's Claims Against the County Are Meritless Because Her
        Alleged Injuries Did Not Result From the Implementation of An
        Official Government Policy or Custom. ................................................... 12

    C.   No Genuine Dispute of Material Fact Exists Regarding Plaintiff's
        Section 1983 Claim for Violation of the First Amendment (First
        Cause of Action). ................................................................................... 14

        1.   Plaintiff Did Not Engage in Any Protected Speech. ................. 15

        2.   Plaintiff Was Not Subjected To An Adverse Employment
            Action Because of Her Complaint. .............................................. 15

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

DEFENDANTS COUNTY OF ALAMEDA AND LORI COX'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 18-cv-03738-JST)

D.    No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the Fourth Amendment (Second Cause of Action)..........................................................................................18

E.    No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Due Process, Property (Third Cause of Action)......................................18

  1.   Plaintiff's Was Not Deprived of a Property Interest. ...............................18

  2.   Plaintiff Cannot Establish That She Was Retaliated Against...................19

F.    No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Liberty Interest (Fourth Cause of Action). ...........................................19

  1.   Plaintiff Cannot Establish That Defendants Made Any Stigmatizing Statements About Her. ........................................................20

  2.   Plaintiff Cannot Establish That The Alleged Stigmatizing Statements Were Made In Connection With An Adverse Employment Action. ...................................................................................20

G.    No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Retaliation (Fifth Cause of Action). .........................................................21

H.    No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Ratification (Sixth Cause of Action). .......................................................21

I.    No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Negligent Hiring - Training (Seventh Cause of Action). ......................21

J.    Plaintiff's Claims Against Cox Should Be Dismissed As She Is Entitled to Qualified Immunity. ...............................................................22

K.    Plaintiff's Claim For Punitive Damages Against Cox Is Meritless.....................22

V.    CONCLUSION .............................................................................................................23

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

# TABLE OF AUTHORITIES

**Cases**

*Braddock v. Clark Cty.* (9th Cir. 2005) 158 F. App'x 803....................................19

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317....................................11

*Chang v. Safe Horizons* (2d Cir. 2007) 254 Fed.Appx. 838 ....................................17

*City of Canton, Ohio v. Harris* (1989) 489 U.S. 378 ....................................21

*Clouthier v. Cty. of Contra Costa* (9th Cir. 2010) 591 F.3d 1232 ....................................13

*Coszalter v. City of Salem* (9th Cir. 2003) 320 F.3d 968 ....................................14, 22

*Dang v. Cross* (9th Cir. 2005) 422 F.3d 800 ....................................23

*Davis v. Ellensburg* (9th Cir.1989) 869 F.2d 1230 ....................................12

*DeHart v. Baker Hughes Oilfield Operations* (5th Cir.2007) 214 Fed. Appx. 437 ....................................17

*Estate of Ford v. Ramirez-Palmer* (9th Cir. 2002) 301 F.3d 1043....................................22

*Fed. Deposit Ins. Corp. v. Henderson* (9th Cir. 1991) 940 F.2d 465 ....................................20

*Gillette v. Delmore* (9th Cir. 1992) 979 F.2d 1342 ....................................13, 14

*Keenan v. Allan* (9th Cir. 1996) 91 F.3d 1275 ....................................12

*Kennedy v. City of Ridgefield* (9th Cir. 2006) 439 F.3d 1055 ....................................22

*Kersting v. Wal-Mart Stores, Inc.* (7th Cir. 2001) 250 F.3d 1109 ....................................17

*Llamas v. Butte Cmty. Coll. Dist.* (9th Cir. 2001) 238 F.3d 1123....................................19, 20

*Luox v. Maire* (9th Cir. 2009) 337 F. App'x 695 ....................................17

*Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658....................................12

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.* (9th Cir. 2000) 210 F.3d 1099....................................11

*Nunez v. City of Los Angeles* (9th Cir. 1998) 147 F.3d 867 ....................................18

*Oviatt v. Pearce* (9th Cir.1992) 954 F.2d 1470....................................12

*Saucier v. Katz* (2001) 533 U.S. 194 ....................................22

*Smith v. Wade* (1983) 461 U.S. 30 ....................................22

*Smolen v. Deloitte, Haskins & Sells* (9th Cir. 1990) 921 F.2d 959....................................12

*Tibbetts v. Kulongoski* (9th Cir. 2009) 567 F.3d 529 ....................................20

1

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

*Turner v. City & Cty. of San Francisco* (9th Cir. 2015) 788 F.3d 1206 ........................................15

*Ulrich v. City & Cty. of San Francisco* (9th Cir. 2002) 308 F.3d 968 ...........................…… ………19

*United States v. Ziegler* (9th Cir. 2007) 474 F.3d 1184 ...............................................................18

**Statutes**

Cal. Civ. Code § 3294 ...................................................................................................................22

Fed. R. Civ. P. 56(a) ......................................................................................................................11

Fed. R. Civ. P. 56(g)......................................................................................................................11

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

DEFENDANTS COUNTY OF ALAMEDA AND LORI COX'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 18-cv-03738-JST)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

**<u>NOTICE OF MOTION AND MOTION</u>**

TO PLAINTIFF SYLVIA SOUBLET:

NOTICE IS HEREBY GIVEN that on October 23, 2019 at 2:00 p.m. or as soon thereafter as counsel may be heard by the above-entitled Court, located at 1301 Clay Street, Oakland, CA 94612, Defendants County of Alameda (the "County") and Lori Cox ("Cox") (collectively, "Defendants") will and hereby do move the Court for summary judgment, or in the alternative, partial summary judgment of claims, regarding the Complaint filed by Plaintiff Sylvia Soublet ("Plaintiff").  Defendants are entitled to summary judgment or, in the alternative, partial summary judgment of claims, on the grounds that there are no genuine disputes of material fact with regard to any of Plaintiff's claims.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declarations of Brian H. Chun and Lori Cox, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

**<u>STATEMENT OF RELIEF SOUGHT</u>**

Defendants respectfully request that this Court enter summary judgment in Defendants' favor as to the entirety of Plaintiff's Complaint or, in the alternative, grant Defendants' motion for partial summary judgment of claims.

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**I.      <u>STATEMENT OF ISSUES</u>**

A.      Whether any genuine dispute of material fact exists with regard to Plaintiff's Section 1983 Claim for Violation of the First Amendment (First Cause of Action).

B.      Whether any genuine dispute of material fact exists with regard to Plaintiff's Section 1983 Claim for Violation of the Fourth Amendment (Second Cause of Action).

C.      Whether any genuine dispute of material fact exists with regard to Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Due Process,

1

1  Property (Third Cause of Action).

2  D.  Whether any genuine dispute of material fact exists with regard to Plaintiff's

3  Section 1983 Claim for Violation of the Fourteenth Amendment – Liberty Interest

4  (Fourth Cause of Action).

5  E.  Whether any genuine dispute of material fact exists with regard to Plaintiff's

6  Section 1983 Claim for Violation of the Fourteenth Amendment – Retaliation

7  (Fifth Cause of Action)

8  F.  Whether any genuine dispute of material fact exists with regard to Plaintiff's

9  Section 1983 Claim for Violation of the Fourteenth Amendment – Ratification

10  (Sixth Cause of Action).

11  G.  Whether Cox is entitled to qualified immunity.

12  H.  Whether Plaintiff's claim for punitive damages against Cox should be dismissed.

## II.    INTRODUCTION

Plaintiff is an Executive Program Coordinator for the Alameda County Social Services Agency ("SSA") who has not been fired or demoted.  In fact, she is still employed in the SSA. Yet, she has filed this lawsuit seeking damages under Section 1983 based on alleged violations of the First, Fourth and Fourteenth Amendments against her current employer, the County, as well as her supervisor, SSA Director Cox.[1]  She loosely claims Cox retaliated against her for making a written complaint to the County on April 22, 2017.  However, the facts show no such events ever took place after her April 22, 2017 complaint.  Instead, their relationship improved after Plaintiff made her April 22, 2017 complaint.

The one employment action that Plaintiff alleges occurred after she complained was a Letter of Reprimand Cox issued to Plaintiff in January 2018, nine months after her complaint.

---

[1] Plaintiff's state law claims for (1) invasion of privacy in violation of the California Constitution, (2) violation of the Information Practices Act of 1977, (3) violation of California Labor Code Section 1102.5, (4) intentional infliction of emotional distress, and (5) negligence (Gov't Code Section 815.2), were dismissed with prejudice by the Court on November 29, 2018.  (Dkt. No. 27.)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

2

1    While Plaintiff contends that the Letter of Reprimand was unfair, she admits the factual bases for

2    the discipline, i.e., that she intentionally violated what she understood to be a clear work directive

3    from Cox, her supervisor, to attend a meeting with Cox and HRS Director Joe Angelo ("Angelo")

4    and that when Cox and Angelo later tried to meet with Plaintiff, she repeatedly interrupted

5    Angelo as he tried to speak and then abruptly left the meeting.  There is no evidence to support

6    Plaintiff's claim that the Letter of Reprimand she received had anything to do with her complaint

7    nine months earlier.

8          Unable to show any evidence of retaliation after her complaint, Plaintiff points to alleged

9    events that occurred *prior* to her complaint to somehow claim that those acts were in retaliation

10   for her complaint.  Here, the non-property interest events alleged by Plaintiff consist of everyday

11   work place decisions, including the setting of work standards and expectations and the managing

12   of those expectations.  These are not Sections 1983 events and, more importantly, they allegedly

13   occurred prior to Plaintiff's complaint and as a result cannot support the basis for Plaintiff's

14   claims.

15         In the end, and as will be shown, this case is nothing more than an attempt by Plaintiff to

16   force the SSA to do something that it legally cannot do, i.e., create and place her in a preferential

17   job without going through a competitive recruitment that gives all qualified candidates an

18   opportunity to compete for the job.  Plaintiff claims that Cox somehow single-handedly

19   prevented her from getting the job.  The fact is, and notwithstanding Plaintiff's allegations, Cox

20   never offered that which she did not have the right to offer.  She never promised Plaintiff that a

21   new position would be created specifically for her and that she would get the position

22   notwithstanding the Civil Service Rules.  Indeed, she could not.  Such a promise would be an

23   ultra vires unenforceable contract that would violate both the spirit and the letter of the Civil

24   Service Rules.  Furthermore, it is undisputed that Cox did not take any actions to prevent Plaintiff

25   from being promoted into a newly created position.  The fact that a new position was not created

26   specifically for Plaintiff, therefore, cannot have been retaliatory.

27

28

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

3

1

### III.  STATEMENT OF FACTS

2

**A.  Plaintiff's Relationship With Cox.**

3

Plaintiff and Cox were friends and have known each other for over fifteen years.

4

(Deposition of Plaintiff Sylvia Soublet ("Pl. Depo.) at 67:17-23 (Declaration of Brian H. Chun

5

("Chun Decl."), Ex. A.)  However, on April 22, 2017, Plaintiff sent each member of the Board of

6

Supervisors and Susan S. Miranishi, County Administrator, an "Employee Complaint" about

7

"personnel and management concerns" regarding Cox.  (Pl. Depo. at 185:12-186:21 and Depo.

8

Ex. 11 (Chun Decl., Ex. A).)  Plaintiff asserted that over the year prior to her complaint, Cox had

9

engaged in personnel and management practices that she believed created a hostile work

10

environment.[2]  (Pl. Depo. at 185:12-186:21 and Depo. Ex. 11 (Chun Decl., Ex. A)

11

Plaintiff's April 22, 2017 complaint was the first time she had ever complained to anyone

12

about Cox.  (Pl. Depo. at 186:19-21, 326:12-327:20 and Depo. Ex. 27 at Interrogatory No. 8

13

14

_____

15

[2] Specifically, Plaintiff alleged the following in her April 22, 2017 complaint:

16
**"Hostile Work Environment:**
- Changes in job expectations that are not communicated

17
- Management *oversight* that impedes my ability to exercise comparable discretion and latitude afforded other *executive* managers

18
- Fabricated claims of emotional and mental instability
- Professional marginalization

19
**Abuse of Power**
- Management *directive* in violation of personnel and ADA laws.

20
- Attendance reporting requirements not applicable to an FLSA-exempt management employee

21

22
- Disparaging personal and professional assertions
**Disparate Treatment:**

23
- Disparate staff expectations
- Retaliatory personnel practices

24
- Denial of professional development opportunities
- Inconsistent enforcement of contracting practices

25
**Violation of Personnel Practices:**
- Sharing of confidential employment information

26
- Violation of privacy under FMLA protection

27
- Fabricated claims of emotional and mental instability."

(Pl. Depo. at 185:12-186:21 and Depo. Ex. 11 (Chun Decl., Ex. A).)

28

4

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

(Chun Decl., Ex. A).)  Plaintiff does not know why Cox was doing the things she was doing and does not know if Cox had an improper motive.  Rather, Plaintiff simply alleges Cox had done the same thing to others in the past.  Plaintiff testified she has no idea why Cox "targeted" her and other employees.  (Pl. Depo. at 189:6-190:25 (Chun Decl., Ex. A).)

On May 8, 2017, the County retained Meyers-Nave, a law firm, to investigate the allegations in Plaintiff's April 22, 2017 complaint.  The County also notified Plaintiff of the investigation and gave her the option of taking a paid administrative leave during the pendency of the investigation.  Plaintiff agreed and thereafter took an almost five month paid administrative leave.  (Pl. Depo. at 191:20-193:22, 195:22-196:2 (Chun Decl., Ex. A).)

Meyers-Nave completed its investigation in August 2017 and concluded that it was unable to substantiate any of Plaintiff's claims, except to say it was inappropriate for Cox to share information about Plaintiff with a former employee.  (Declaration of Lori Cox ("Cox Decl.") at ¶ 10.)  Plaintiff was notified of the outcome of the investigation and returned from her paid administrative leave shortly thereafter in September 2017.  (Pl. Depo. at 196:3-7 (Chun Decl., Ex. A).)  Plaintiff admits that from the time of her complaint on April 22, 2017, through the filing of her lawsuit, Cox's behavior towards her improved.  (Pl. Depo. at 195:22-198:24 (Chun Decl., Ex. A).)

**B.     The January 18, 2018 Letter of Reprimand.**

On November 30, 2017, Plaintiff sent an email with an attached letter to HRS Director Angelo (with a copy to Cox) requesting an update on the status of the creation of a higher classification position in the SSA that Cox had been working on.  (Cox Decl. at ¶ 11 and Decl. Ex. B; Pl. Depo. at 237:23-249:18 and Depo Ex. 15 (Chun Decl., Ex. A).)

On December 5, 2017, Angelo sent an email to Plaintiff (with a copy to Cox) stating he and Cox would be happy to meet with her to discuss the issue.  (Cox Decl. at ¶ 12 and Decl. Ex. C; Pl. Depo. at 250:1-23 and Depo Ex. 16 (Chun Decl., Ex. A).)  Both Cox and Angelo felt that an in-person meeting would be more productive than an exchange of emails.  (Cox Decl. at ¶ 12.)  Accordingly, on December 6, 2017, Pat Olivarez ("Olivarez"), Angelo's secretary, sent an

5

email to Plaintiff asking if she was available to meet with Cox and Angelo on December 21, 2017.  (Cox Decl. at ¶ 13 and Decl. Ex. D; Pl. Depo. at 253:21-255:14 and Depo Ex. 17 (Chun Decl., Ex. A).)  Later that same day, December 6, 2017, Plaintiff sent an email to Angelo (with a copy to Cox) stating that before meeting with Angelo and Cox, she wanted a written response to her November 30, 2017 letter.  (Cox Decl. at ¶ 14 and Decl. Ex. E; Pl. Depo. at 258:24-260:5 and Depo Ex. 19 (Chun Decl., Ex. A).)  The following day, December 7, 2017, Plaintiff also sent an email to Olivarez stating that the proposed meeting time did not work because she was awaiting written correspondence from Angelo.  (Cox Decl. at ¶ 15 and Decl. Ex. F; Pl. Depo. at 255:15-256:19 and Depo Ex. 18 (Chun Decl., Ex. A).)

Angelo then sent Plaintiff an invitation for a meeting with Cox and Angelo on December 12, 2017.  (Cox Decl. at ¶ 16; Pl. Depo. at 258:24-259:11 and Depo Ex. 19 (Chun Decl., Ex. A).)  On December 12, 2017, Plaintiff sent an email to Angelo (with a copy to Cox) again declining the meeting invitation and stating she would meet with Angelo and Cox only after Angelo provided her with a written response to her November 30, 2017 letter.  (Cox Decl. at ¶ 16 and Decl. Ex. E; Pl. Depo. at 258:24-259:11, 264:18-265:3 and Depo Ex. 19 (Chun Decl., Ex. A).)

Later that same day, December 12, 2017, Cox sent an email to Plaintiff (with a copy to Angelo) stating:  "Sylvia-as you have stated below, you have received written correspondence previously from HRS in regards to this matter that have not clearly answered your questions.  As such, Joe and I will meet with you at 3:30 p.m. today in my office to address them.  Please make yourself available."  (Cox Decl. at ¶ 17 and Decl. Ex. G; Pl. Depo. at 265:9-266:19 and Depo Ex. 20 (Chun Decl., Ex. A).)  Plaintiff replied that she "will not be attending today's meeting."  (Cox Decl. at ¶ 18 and Decl. Ex. H; Pl. Depo. at 271:9-272:1 and Depo Ex. 21 (Chun Decl., Ex. A).)

Cox then sent yet another email to Plaintiff on December 12, 2017 stating:  "Hi, Sylvia – to be clear, I am directing you to be at the 3:30 meeting."  (Cox Decl. at ¶ 19 and Decl. Ex. I; Pl. Depo. at 274:22-275:22 and Depo Ex. 22 (Chun Decl., Ex. A).)  Plaintiff, despite understanding that Cox, her supervisor, was giving her a work directive to attend the meeting, replied in a clear act of insubordination that she would not be attending the meeting.  (Cox Decl. at ¶ 20 and

6

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

1    Decl. Ex. J; Pl. Depo. at 275:13-16, 275:24-276:16, 278:5-7 and Depo Ex. 23 (Chun Decl., Ex.

2    A).)

3            Accordingly, on December 12, 2017, Cox and Angelo approached Plaintiff and attempted

4    to meet with her in person.  (Cox Decl. at ¶ 21; Pl. Depo. at 282:14-286:5 (Chun Decl., Ex. A).)

5    Plaintiff, however, interrupted Angelo at least three times while he was in the middle of trying to

6    tell her something.  (Cox Decl. at ¶ 21; Pl. Depo. at 286:14-289:2, 295:1-13, 297:2-298:1,

7    299:10-18 (Chun Decl., Ex. A).)

8            On January 18, 2018, Cox issued a Letter of Reprimand to Plaintiff for her "willful

9    disobedience," "insubordination" and "discourteous treatment of the general public or fellow

10   employees."  (Cox Decl. at ¶ 22 and Decl. Ex. K; Pl. Depo. at 289:5-17 and Depo Ex. 24 (Chun

11   Decl., Ex. A).)  There was no corresponding reduction in pay or benefits.  (Cox Decl. at ¶ 22.)

12   Plaintiff now alleges that this was an act of retaliation for her complaint about Cox, which she

13   made nine months earlier.  (Pl. Depo. at 201:10-203:25 (Chun Decl., Ex. A).)

14       **C.    The Alleged Actions Taken *Before* Plaintiff's April 22, 2017 Complaint.**

15           Likely realizing that the Letter of Reprimand for insubordination and unprofessional

16   conduct did not constitute an actionable 1983 constitutional rights violation, Plaintiff attempts to

17   bring in acts that allegedly took place before her April 2017 complaint to bolster her claim of

18   retaliation.  In doing so, she only highlights that she and Cox's relationship began to change for

19   the worse in approximately 2015 or 2016, way before she ever made a workplace complaint.  (Pl.

20   Depo. at 67:24-70:13 (Chun Decl., Ex. A).)

21       **1.    Plaintiff's Application to Have Her Position Reclassified.**

22           In September 2013, almost four years before she made her complaint, Plaintiff sought to

23   have her position placed into a higher classification.  (Cox Decl. at ¶ 2; Pl. Depo. at 203:20-204:6

24   (Chun Decl., Ex. A).)  While Cox did not have the authority to reclassify Plaintiff's position, she

25   supported Plaintiff throughout this process.  (Cox Decl. at ¶ 2; Pl. Depo. at 205:2-9, 206:6-209:5

26   (Chun Decl., Ex. A).)  The County denied Plaintiff's application in June 2014.  (Cox Decl. at ¶ 2;

27   Pl. Depo. at 208:7-209:5 (Chun Decl., Ex. A).)  However, in November 2015, the County gave

28

7

1    Plaintiff a new title, along with additional compensation in the form of a 7% footnote, which

2    meant she would receive additional compensation in the amount of 7% of her base salary.  (Cox

3    Decl. at ¶ 2; Pl. Depo. at 209:6-210:4 (Chun Decl., Ex. A).)

### 2.    Plaintiff's Desire to Have a New Position In A Higher Classification Created Specifically for Her.

6            Plaintiff alleges that concurrent with her efforts to have her position reclassified in 2013,

7    Cox also discussed a possible alternative of having a new position created in the SSA.  (Pl. Depo.

8    at 210:5-212:12, 307:18-308:11 (Chun Decl., Ex. A).)  Plaintiff alleges that Cox at first talked

9    about the possibility of creating a new position specifically for Plaintiff, but claims that starting

10   in about 2014 or 2015, Cox began to change the way she spoke about the possible new position

11   and began referring to it as a possible new position that Plaintiff and others would need to apply

12   for.  (Pl. Depo. at 308:14-310:20 (Chun Decl., Ex. A).)  If anything, such comments would be

13   consistent with the intent of the Civil Service Rules.  On June 16, 2016, Cox sent Plaintiff an

14   email regarding the creation of a new position and stated that her "intention/plan remains the

15   same – create a position and <u>do a recruitment</u>."  (Pl. Depo. at 233:12-235:7 and Depo. Ex. 13

16   (emphasis added) (Chun Decl., Ex. A).)  By March 17, 2017, and again, before her April 2017

17   complaint, Plaintiff believed that Cox was not going to help her get promoted into a newly

18   created position.  (Pl. Depo. at 229:3-230:3 (Chun Decl., Ex. A).)  Plaintiff admits that Cox never

19   promised Plaintiff that she would be promoted into a new position.  (Pl. Depo. at 212:13-218:5

20   (Chun Decl, Ex. A).)  Indeed, Cox does not have the authority to create a new position or the

21   authority to decide who will fill a new position.  (Cox. Decl. at ¶¶ 3-4.)  Plaintiff also does not

22   dispute that Cox did not take any actions to try to prevent Plaintiff from being promoted into a

23   newly created position.  (Cox. Decl. at ¶ 4; Pl. Depo. at 223:1-4 (Chun Decl., Ex. A).)

### 3.    Plaintiff's Frustration With Cox's Management Style.

25           Plaintiff testified that in approximately 2015 or 2016, Cox began micro-managing her,

26   changing her job responsibilities and placing unfair work expectations on her.  (Pl. Depo. at

27   67:24-70:13 (Chun Decl., Ex. A).)  Plaintiff testified she has no idea why Cox's behavior towards

8

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

her changed.  (Pl. Depo. at 69:15-23, 70:14-17, 185:12-186:21, 189:23-190:25 and Depo Ex. 11 (Chun Decl., Ex. A).)  As discussed below, the reality is that Plaintiff became frustrated with Cox's efforts to account for her whereabouts during work hours.  (Cox Decl. at ¶¶ 5-9.)

### 4.     Plaintiff's Repeated Failure To Notify Cox of Her Whereabouts During Working Hours.

#### a)      The October 10, 2016 Conference.

In approximately 2014 or 2015, two to three years before Plaintiff's 2017 complaint, other employees began expressing concerns to Cox that Plaintiff was regularly out of the office and often difficult to locate.  (Cox. Decl. at ¶ 5.)  Cox then noticed herself that Plaintiff was often not in the office and difficult to find.  (Cox. Decl. at ¶ 5.)  Accordingly, on October 10, 2016, Cox held a conference with Plaintiff and reminded her of the importance of keeping Cox in the loop as to her whereabouts during working hours.  (Cox. Decl. at ¶ 5; Pl. Depo. at 111:13-114:9 and Depo. Ex. 5 (Chun Decl., Ex. A).)  Plaintiff calls this micromanaging.  Regardless, the reminder seemed to not have had any effect because Plaintiff continued to leave without notifying Cox, as discussed below.

#### b)      The March 24, 2017 Conference

One of Plaintiff's job responsibilities was to attend meetings of the Board of Supervisors. (Pl. Depo. at 100:1-17, 130:6-10 (Chun Decl., Ex. A).)  On March 21, 2017, Cox noted that Plaintiff did not attend a Board of Supervisors meeting that day and had not notified Cox of her whereabouts.  (Cox. Decl. at ¶ 6; Pl. Depo. at 120:10-126:1, 131:13-135:1, 150:8-22 (Chun Decl., Ex. A).)  Cox later spoke to Plaintiff about her absence and Plaintiff stated that she was absent because she had been shopping for a gift basket to be raffled off at an event coordinated by the County Administrator's Office.  (Cox. Decl. at ¶ 6; Pl. Depo. at 117:13-25, 120:10-123:21 and Depo. Ex. 6 (Chun Decl., Ex. A).)  Plaintiff admits there was nothing improper about Cox raising with Plaintiff the issue of her missing a Board of Supervisors meeting.  (Pl. Depo. at 153:12-16 (Chun Decl., Ex. A).)

Two days later, on March 23, 2017, Plaintiff was absent from work again and did not alert

9

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

1    Cox as to her whereabouts.  More precisely, Plaintiff did not notify Cox that she would be out of

2    the office at all.  (Cox. Decl. at ¶ 7; Pl. Depo. at 117:17-120:9 and Depo Ex. 6 (Chun Decl., Ex.

3    A).)  Plaintiff admits this was a result of her own mistake.  (Pl. Depo. at 120:6-9, 148:17-21

4    (Chun Decl., Ex. A).)

5          So, on March 24, 2017, Cox held another conference with Plaintiff and again reminded

6    her of the importance of notifying her directly when she would be out of the office.  (Cox. Decl.

7    at ¶ 8; Pl. Depo. at 117:17-25 and Depo Ex. 6 (Chun Decl., Ex. A).)  Cox believed that Plaintiff's

8    conduct was setting a bad example and that Plaintiff's demeanor had changed in recent months.

9    She seemed distracted, less engaged at agency executive team meetings, and was seen crying at

10   work.  (Cox. Decl. at ¶ 8.)  Accordingly, during the March 24, 2017 meeting, Cox offered

11   Plaintiff an EAP referral, which Plaintiff took offense to and declined.  (Cox. Decl. at ¶ 8; Pl.

12   Depo. at 135:2-138:24 and Depo Ex. 6 (Chun Decl., Ex. A).)

13                    **c)**    **The April 5, 2017 Conference**

14         According to Plaintiff, because Cox had not set any "parameters" regarding her directive

15   that Plaintiff notify Cox when she would be out of the office, Plaintiff chose to interpret Cox's

16   directive "very literally" and "e-mailed [Cox] every time that [Plaintiff] was leaving the office,"

17   and also when Plaintiff would get "back to the office."  (Pl. Depo. at 158:21-159:13 (Chun Decl.,

18   Ex. A).)  Plaintiff testified as follows:

19         A.  I'll just say that the action item where Lori asked me to e-mail her directly when I am
20         out of the office, even when I did that, that was called into question.
           Q.  Um-hmm.
21         A.  I -- There -- As you can see, there – there are no parameters around this.  It doesn't
           say, "E-mail me when you are out of the office sick.  E-mail when you're out of the office
22         on -- on medical leave.  E-mail me when you're out of the office going to lunch.  E-mail
           me when you're out of the office going to meetings."  There were no parameters, so I took
23         this very literally.  And I -- Following her guidance, I e-mailed her every time that I was
           leaving the office.  And when I got back to the office, I e-mailed her.
24
25         (Pl. Depo. at 158:22-159:13 (Chun Decl., Ex. A).)

26         Accordingly, Cox scheduled another conference with Plaintiff on April 5, 2017 to clarify

27   that Plaintiff only needed to notify Cox when she would be out of the office due to illness,

28

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

10

DEFENDANTS COUNTY OF ALAMEDA AND LORI COX'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 18-cv-03738-JST)

vacation, working from home or an emergency. (Cox Decl. at ¶ 9; Pl. Depo. at 162:4-164:15, 169:9-20, Depo. Exs. 8 and 9 (Chun Decl., Ex. A).)

Later on in the conference, Plaintiff asked Cox if she had spoken to anyone about Plaintiff's *personal* information. (Pl. Depo. at 175:15-21 (Chun Decl., Ex. A).) Plaintiff alleges that Cox responded that she had told Olis Simmons ("Simmons"), a former employee of the County and a mutual friend of both Plaintiff and Cox, about Plaintiff's lack of engagement at agency executive team meetings. (Pl. Depo. at 175:15-179:10 (Chun Decl., Ex. A).) Plaintiff further alleges that on March 17, 2017, prior to Plaintiff's March 24 and April 4, 2017 conferences with Cox, Simmons had told Plaintiff that she was aware of a planned meeting between Cox and Plaintiff, that Plaintiff disappears and people do not know where she is, that Cox did not want people to think Cox was giving Plaintiff preferential treatment, and that Plaintiff needed to be prepared to show her worth. (Pl. Depo. at 179:11-183:5 (Chun Decl., Ex. A).)

All of the above events are alleged to have occurred prior to Plaintiff's April 22, 2017 complaint.

## IV.    LEGAL ANALYSIS

### A.    Summary Judgment Standard

A trial court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (Fed. R. Civ. P. 56(a).) Upon such a showing, the court may grant summary judgment in the party's favor upon all or any part thereof. (Fed. R. Civ. P. 56(g).) A moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of material fact. (*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 322; *see also, Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.* (9th Cir. 2000) 210 F.3d 1099.) On issues for which the non-moving party will have the burden at trial, the moving party need only point out "that there is an absence of evidence to support the non-moving party's case." (*Celotex Corp.*, 477 U.S. at 325.)

Once the moving party makes the requisite showing, the burden then shifts to the non-

11

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

1    moving party to present specific facts showing that a genuine issue exists for trial, by producing

2    "at least some significant probative evidence tending to support" the claims.  (*Smolen v. Deloitte,*

3    *Haskins & Sells* (9th Cir. 1990) 921 F.2d 959, 963; *Celotex*, 477 U.S. at 324.)  The non-moving

4    party must identify with reasonable particularity the evidence precluding summary judgment.

5    (*Keenan v. Allan* (9th Cir. 1996) 91 F.3d 1275, 1279.)  Summary judgment must be entered if the

6    non-moving party fails to set forth specific facts showing there is a genuine issue for trial.

7    (*Celotex*, 477 U.S. at 324.)

8         **B.     Plaintiff's Claims Against the County Are Meritless Because Her Alleged
                   Injuries Did Not Result From the Implementation of An Official Government**
9                  **Policy or Custom.**

10

11        For the County to be liable for a civil rights violation under Section 1983, Plaintiff's

12   injury must have resulted from the implementation of "an official government policy or custom."

13   (*Davis v. Ellensburg* (9th Cir.1989) 869 F.2d 1230, 1233 (*citing Monell v. New York City Dept.*

14   *of Social Services* (1978) 436 U.S. 658, 694).)  Municipalities may not be held liable under

15   Section 1983 by a respondeat superior theory.  (*Monell*, 436 U.S. at 691–92.)  To prove that a

16   municipality has violated her constitutional rights under Section 1983, Plaintiff must show:  (1)

17   that she possessed a constitutional right of which she was deprived; (2) that the municipality had

18   a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional

19   right; and (4) that the policy is the moving force behind the constitutional violation.  (*Oviatt v.*

20   *Pearce* (9th Cir.1992) 954 F.2d 1470, 1474.)

21        Here, Plaintiff does not allege that the County had a specific policy that resulted in a

22   constitutional rights violation.  Rather, Plaintiff alleges that Cox had "final policy-making

23   authority" and that her decisions were ratified by the Board of Supervisors.  (Plaintiff's

24   Complaint at ¶¶ 64-69.)  One avenue for satisfying the policy requirement is by showing that the

25   individual who committed the constitutional tort was an official with final policy-making

26   authority with regard to the alleged actions taken or that such an official ratified a subordinate's

27   unconstitutional decision or action and the basis for it.  (*Clouthier v. Cty. of Contra Costa* (9th

28

12

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

Cir. 2010) 591 F.3d 1232, 1250; *Gillette v. Delmore* (9th Cir. 1992) 979 F.2d 1342, 1349-50.)

The "fact that a particular official—even a policy-making official—has discretion in the exercise

of particular functions does not, without more, give rise to municipal liability based on an

exercise of that discretion. . . .  [T]he personnel decisions of a County Sheriff, who has discretion

to hire and fire employees but is not the county official responsible for establishing county

employment policy, could not be attributed to the municipality." (*Gillette*, 979 F.2d at 1349.)

Here, it is undisputed that Cox does not have final policy-making authority with regard to

the alleged actions taken.  First, Plaintiff alleges that Cox subjected her to a hostile work

environment, abuse of power, disparate treatment, and violation of personnel practices as set

forth in her April 22, 2017 complaint.  To the extent Plaintiff alleges that these actions were

retaliatory, her argument fails because Plaintiff admits that these alleged actions were taken

*before* she first complained about Cox.  (Pl. Depo. at 186:19-21, 326:12-327:20 and Depo. Ex. 27

at Interrogatory No. 8 (Chun Decl., Ex. A).)  Even if, *arguendo*, they were retaliatory, it is

undisputed that Cox is not responsible for establishing County policy regarding the scope of her

personnel management authority.  (Cox Decl. at ¶ 23.)  The fact that she has discretion to make

personnel management decisions, e.g. deciding whether to add or remove a particular job

assignment from an employee's job duties, does not make her a final policymaking official.

(*Gillette*, 979 F.2d at 1349.)

Second, Plaintiff alleges that Cox disclosed personal information about her in violation of

County policy.  However, it is undisputed that Cox does not have the authority to determine

County policy with regard to the kinds of information that may or may not be disclosed to certain

people.  (Cox Decl. at ¶ 24.)

Third, Plaintiff alleges that Cox denied her a promotion in retaliation for her April 22,

2017 complaint about Cox.  As a preliminary matter, there is no evidence that Cox denied

Plaintiff a promotion.  Indeed, it is undisputed that Cox does not have the authority to simply

create a new position for Plaintiff.  Promotions are subject to the County's Civil Service Rules,

which require that candidates take *competitive* examinations.  (Cox Decl. at ¶ 4 and Decl. Ex. A

13

1   at Civil Service Rules 1400 and 1480.)  It is also undisputed that Cox did not take any actions to

2   prevent Plaintiff from obtaining a promotion.  (Cox. Decl. at ¶ 4; Pl. Depo. at 223:1-4 (Chun

3   Decl., Ex. A).)  However, even assuming, *arguendo*, that Cox had the authority to give Plaintiff a

4   promotion, it is undisputed that Cox does not have the authority to set County policy regarding

5   promotions.  (Cox Decl. at ¶ 4.)

6          Lastly, Plaintiff alleges that Cox issued her a Letter of Reprimand on January 18, 2018 in

7   retaliation for her April 22, 2017 complaint.  As discussed below, there is no evidence that the

8   Letter of Reprimand was retaliatory.  However, even if it was, it is undisputed that Cox does not

9   have the authority to determine County policy with regard to the kinds of actions that employees

10  can be disciplined for.  (Cox Decl. at ¶ 22.)  Again, the fact that Cox has the discretion to decide

11  that an employee under her supervision should be subject to discipline does not mean that she is a

12  final policymaking official so as to subject the County to liability.  (*Gillette*, 979 F.2d at 1349.)

13         Moreover, it also cannot be disputed that the Board of Supervisors did not ratify Cox's

14  actions.  Indeed, the Board of Supervisors had no involvement in the above alleged actions taken

15  by Cox.  (Cox Decl. at ¶¶ 4, 22, 23, 24.)  Plaintiff's claims against the County should, therefore,

16  be dismissed.

### C.   No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the First Amendment (First Cause of Action).

19         Plaintiff alleges that Defendants retaliated against her for complaining about Cox, and

20  thereby violated her First Amendment right to freedom of speech.  (Pl. Depo. at 326:12-327:20

21  and Depo. Ex. 27 at Interrogatory No. 1 (Chun Decl., Ex. A).  In order to prevail on a Section

22  1983 claim against a government employer for violation of the First Amendment, an employee

23  must show (1) that he or she engaged in protected speech; (2) that the employer took an adverse

24  employment action against the employee; and (3) that his or her speech was a substantial or

25  motivating factor for the adverse employment action.  (*Coszalter v. City of Salem* (9th Cir. 2003)

26  320 F.3d 968, 973.)

27

28

14

**1.    Plaintiff Did Not Engage in Any Protected Speech.**

Plaintiff did not engage in any protected speech.  An employee's speech is protected under the First Amendment if it addresses "a matter of legitimate public concern."  (*Id.* at 973.) Speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern.  (*Id.*)  The Ninth Circuit Court of Appeals has "framed that inquiry with two questions:  'Why did the employee speak (as best as we can tell)?  Does the speech seek to bring to light actual or potential wrongdoing or breach of public trust, or is it animated instead by dissatisfaction with one's employment situation?'"  (*Turner v. City & Cty. of San Francisco* (9th Cir. 2015) 788 F.3d 1206, 1210 (internal quotations omitted).)  Here, Plaintiff's April 22, 2017 complaint that she was treated unfairly by Cox, her supervisor, is a run of the mill individual personnel dispute that does not involve a matter of public concern.  Indeed, Plaintiff's complaint makes it clear that she was motivated by dissatisfaction with her personal employment situation. She writes:  "What I cannot continue to do is work in a climate where I am devalued, concerns about my mental and emotional health are raised and discussed openly with others, and I do not know what to guard against from one day to the next."  (Pl. Depo. at 185:12-23 and Depo. Ex. 11 (Chun Decl., Ex. A).)  Plaintiff's claim, therefore, fails for this reasons alone.

**2.    Plaintiff Was Not Subjected To An Adverse Employment Action Because of Her Complaint.**

Assuming, *arguendo*, that Plaintiff engaged in protected speech, which she did not, Plaintiff still cannot prevail on her claim because she cannot establish that she was subjected to an adverse employment action as a result of her April 22, 2017 complaint about Cox.

First, the alleged hostile work environment, abuse of power, disparate treatment, and violation of personnel practices, of which Plaintiff complains in her April 22, 2017 complaint obviously cannot constitute retaliatory acts because they allegedly occurred *before* Plaintiff made her complaint.  Indeed, Plaintiff admits that she first complained about Cox on April 22, 2017. (Pl. Depo. at 186:19-21, 326:12-327:20 and Depo. Ex. 27 at Interrogatory No. 8 (Chun Decl., Ex. A).)  Moreover, Plaintiff admits that after she complained, Cox's behavior towards her

15

MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 18-cv-03738-JST)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

1   improved through the filing of this lawsuit.  (Pl. Depo. at 195:22-198:24 (Chun Decl., Ex. A).)

2          Second, Plaintiff cannot claim that Cox denied her a promotion as a retaliatory act.  As a

3   preliminary matter, it is undisputed that Cox never promised Plaintiff that she would create a new

4   position for her.  (Pl. Depo. at 212:13-218:5 (Chun Decl, Ex. A).)  It is equally undisputed that as

5   a government employee, Cox did not have the authority to create a new position for Plaintiff.

6   (Cox Decl. at ¶¶ 3-4.)  The creation of a new job requires a very rigorous approval process

7   involving individuals beyond Cox.  (Cox Decl. at ¶ 3.)  It is also undisputed that Cox does not

8   have the authority to decide who will fill an open position.  (Cox Decl. at ¶ 4.)  As discussed

9   above, promotions are subject to the County's Civil Service Rules, which require that candidates

10  take *competitive* examinations.  (Cox Decl. at ¶ 4 and Decl. Ex. A at Civil Service Rules 1400

11  and 1480.)  Accordingly, Cox advised Plaintiff that she would try to get a new position created

12  and thereafter do a "recruitment" to fill the position.  (Pl. Depo. at 233:12-235:7 and Depo. Ex.

13  13 (emphasis added) (Chun Decl., Ex. A).)  To do otherwise would be to show favoritism, and a

14  failure to comply with rules relating to equal opportunity.  It is also undisputed that Cox did not

15  take any actions to prevent the creation of a new position or to thwart Plaintiff's efforts to have a

16  new position created for her.  (Cox. Decl. at ¶ 4; Pl. Depo. at 223:1-4 (Chun Decl., Ex. A).)

17  Furthermore, even if, *arguendo,* Cox initially said she would try to have a new position created

18  specifically for Plaintiff, and then later backed off of that commitment, Plaintiff admits this

19  change occurred in 2014 or 2015, well before she first complained about Plaintiff on April 22,

20  2017.  (Pl. Depo. at 308:14-310:20 (Chun Decl., Ex. A).)  Therefore, this change could not have

21  been in retaliation for her April 22, 2017 complaint.

22          Third, the Letter of Reprimand did not constitute an adverse employment action as it was

23  not reasonably likely to deter, and in fact, did not deter Plaintiff from making a further complaint.

24  On January 30, 2018, _12 days_ after she received the Letter of Reprimand, Plaintiff submitted a

25  "Claim for Damages" claim to the County in which she repeated the same allegations against

26  Cox that were included in her April 22, 2017 complaint.  Plaintiff's January 31, 2018 claim was

27  based entirely on alleged events that occurred on or before April 22, 2017, and did not include

16

28

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

1   any new allegations. (Pl. Depo. at 322:13-23 and Depo. Ex. 26 (Chun Decl., Ex. A.) (*See Luox*

2   *v. Maire* (9th Cir. 2009) 337 F. App'x 695, 697 ("[I]n the context of this case, the two reprimands

3   and new work performance standards Luox received after complaining to the state attorney

4   general did not rise to the level of adverse employment actions because a reasonable jury could

5   not find they were harmful to the point that they could well dissuade a reasonable worker from

6   making or supporting a charge of discrimination.") (internal quotations omitted); *DeHart v.*

7   *Baker Hughes Oilfield Operations* (5th Cir.2007) 214 Fed. Appx. 437, 442 ("Under the facts

8   before us, we conclude that the written warning to DeHart would not have dissuaded a reasonable

9   worker from making or supporting a charge of discrimination. In the first place, there were

10  colorable grounds for the warning and a reasonable employee would have understood a warning

11  under these circumstances was not necessarily indicative of a retaliatory mind-set. Furthermore,

12  the August 15 written warning did not in fact dissuade a charge of discrimination, given that

13  several weeks later on September 2, a charge was filed. Accordingly, because the written

14  warning did not constitute an adverse employment action, this retaliation claim fails.") (internal

15  quotations omitted); *Chang v. Safe Horizons* (2d Cir. 2007) 254 Fed.Appx. 838, 839 (written

16  warnings did not constitute retaliatory adverse employment action as they would not have

17  dissuaded a reasonable employee from making a complaint); *Kersting v. Wal-Mart Stores, Inc.*

18  (7th Cir. 2001) 250 F.3d 1109, 1118 (written warning did not constitute retaliatory adverse

19  employment action).)

20          Even if, arguendo, the January 18, 2018 Letter of Reprimand did constitute an adverse

21  employment action, Plaintiff can present no evidence that the Letter of Reprimand she received

22  had anything to do with her April 22, 2017 complaint. Indeed, Plaintiff speculates that the action

23  was retaliatory based solely on her opinion that the discipline was too "hasty" and that she should

24  have been afforded the opportunity to discuss the situation. (Pl. Depo. at 319:16-321:13 (Chun

25  Decl., Ex. A).) However, it is undisputed that Plaintiff intentionally refused to comply with what

26  she understood to be a clear work directive from Cox, her supervisor, and that she repeatedly

27  spoke over HRS Director Angelo as he tried to speak with her. (Cox Decl. at ¶ 21; Pl. Depo. at

28

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

17

DEFENDANTS COUNTY OF ALAMEDA AND LORI COX'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
(Case No. 18-cv-03738-JST)

275:13-16, 275:24-276:16, 278:5-7, 286:14-289:2, 297:2-298:1, 299:10-18 and Depo Ex. 23 (Chun Decl., Ex. A).)  There is no evidence that Cox issued the Letter of Reprimand for any reason other than Plaintiff's unprofessional conduct in violation of County policies.

Plaintiff's First Cause of Action should be dismissed.

**D.     No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the Fourth Amendment (Second Cause of Action).**

Plaintiff's claim that Defendants violated her Fourth Amendment right to privacy by disclosing personal information to Simmons is meritless.  The Fourth Amendment protects individuals from unreasonable *searches and seizures*.  (*United States v. Ziegler* (9th Cir. 2007) 474 F.3d 1184, 1190 (holding that while employee had reasonable expectation of privacy in his office at work, the search of his office was not unreasonable).)  Here, Plaintiff does not allege any search and seizure but rather the improper disclosure of private information.  Pl. Depo. at 326:12-327:20 and Depo. Ex. 27 at Interrogatory No. 2 (Chun Decl., Ex. A).)  This does not constitute a violation of the Fourth Amendment.  (*Ziegler*, 474 F.3d at 1190.)

Plaintiff's Second Cause of Action should be dismissed.

**E.     No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Due Process, Property (Third Cause of Action).**

Plaintiff claims that she was deprived of her property interest in her public employment in violation of her right to due process under the Fourteenth Amendment when Cox allegedly retaliated against her.  In order to prevail on this claim, Plaintiff must show she was deprived of a property interest, and that she was deprived of that interest in such a way that "shocks the conscience."  (*Nunez v. City of Los Angeles* (9th Cir. 1998) 147 F.3d 867, 871.)

**1.     Plaintiff's Was Not Deprived of a Property Interest.**

Plaintiff's expectation that she would receive a promotion does not constitute a property interest.  (*Id.* at 873 ("Until someone actually receives a promotion, or at least a binding assurance of a forthcoming promotion, he cannot claim a property interest in the promotion.")

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

18

Here, Plaintiff admits that she was never promised a promotion and that a job position did not exist into which she could be promoted.  Moreover, there was nothing "shocking" about Plaintiff not receiving a promotion she was never promised or any of Cox's alleged actions with regard to the possible creation of a new position.

In addition, the Letter of Reprimand did not deprive Plaintiff of any property interest.  It merely reprimanded for her unprofessional conduct and insubordination.  There was no corresponding reduction in pay or benefits.  (*See Braddock v. Clark Cty.* (9th Cir. 2005) 158 F. App'x 803, 804 (written reprimand did not constitute deprivation of property interest).)

### 2.     Plaintiff Cannot Establish That She Was Retaliated Against.

As discussed above in Section IV.C.2. above, Plaintiff cannot establish that she was denied a promotion and/or issued a Letter of Reprimand because of her April 22, 2017 complaint against Cox.

### F.     No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Liberty Interest (Fourth Cause of Action).

Plaintiff claims that she was deprived of her liberty interest in violation of the Fourteenth Amendment based on her allegation that Cox made stigmatizing comments about Plaintiff to Simmons and also engaged in retaliatory acts, i.e., the alleged denied promotion and Letter of Reprimand.  Plaintiff's claim is meritless.  It is based on what is known as the "stigma-plus" test for establishing deprivation of liberty based on governmental defamation.  Under that test, a plaintiff must show the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, made "in connection with" the denial of some more tangible interest such as employment, or the alteration of a right or status recognized by state.  (*Ulrich v. City & Cty. of San Francisco* (9th Cir. 2002) 308 F.3d 968, 982; *Llamas v. Butte Cmty. Coll. Dist.* (9th Cir. 2001) 238 F.3d 1123, 1129.)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

19

1.   **Plaintiff Cannot Establish That Defendants Made Any Stigmatizing Statements About Her.**

As a preliminary matter, Plaintiff cannot establish that Defendants made any stigmatizing statements about her.  A plaintiff's liberty interest is implicated only when a charge is made against her that might seriously damage her standing and associations in her community. (*Llamas v. Butte Cmty. Coll. Dist.* (9th Cir. 2001) 238 F.3d 1123, 1129.)  In the employment context specifically, a liberty interest is implicated if the alleged statement "impairs a reputation for honesty or morality" and must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that she is not able to take advantage of other employment opportunities.  (*Tibbetts v. Kulongoski* (9th Cir. 2009) 567 F.3d 529, 535–36; *Fed. Deposit Ins. Corp. v. Henderson* (9th Cir. 1991) 940 F.2d 465, 477 ("Only the stigma of dishonesty or moral turpitude gives rise to a liberty interest; charges of incompetence do not.").  Here Cox's alleged statement to Simmons about Cox not being aware of Plaintiff's whereabouts during work hours, at best amount to a claim of poor attendance and/or a failure to communicate with one's supervisor, and not dishonesty or moral turpitude.  Moreover, the alleged statement was made to a single person, Simmons, who was a mutual friend of both Plaintiff and Cox.  Plaintiff cannot establish that this alleged statement would interfere with her ability to take advantage of other employment opportunities.

2.   **Plaintiff Cannot Establish That The Alleged Stigmatizing Statements Were Made In Connection With An Adverse Employment Action.**

In addition, Plaintiff cannot show that the alleged statement was made "in connection with" the alleged denial of promotion and/or Letter of Reprimand.  To establish that the adverse action was made "in connection with" the alleged statement, Plaintiff must show that the statement is so closely related to the adverse action that the adverse action itself may become stigmatizing in the public eye.  (*Tibbetts*, 567 F.3d at 537.)  As a preliminary matter, and as discussed above, Plaintiff was not denied any promotion.  Moreover, there is absolutely no relation between Cox's alleged statement to Simmons and the alleged denial of promotion and/or Letter of Reprimand such that these actions became stigmatizing to Plaintiff in the public eye.

20

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

**G.      No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Retaliation (Fifth Cause of Action).**

This claim is duplicative of Plaintiff's Third Cause of Action for deprivation of property in violation of the Fourteenth Amendment and is meritless as discussed above.  (Plaintiff's First Amended Complaint ("FAC") at ¶¶ 48-52, 58-63 (Chun Decl., Ex. B); Pl. Depo. at 326:12-327:20 and Depo. Ex. 27 at Interrogatory Nos. 3 and 5 (Chun Decl., Ex. A).)  As demonstrated above, Plaintiff cannot establish that she was subjected to any retaliatory actions as a result of her April 22, 2017 complaint.

**H.      No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Ratification (Sixth Cause of Action).**

This claim is also duplicative of Plaintiff's Third Cause of Action for deprivation of property in violation of the Fourteenth Amendment and is meritless as discussed above. (Plaintiff's FAC at ¶¶ 48-52, 64-71 (Chun Decl., Ex. B); Pl. Depo. at 326:12-327:20 and Depo. Ex. 27 at Interrogatory Nos. 3 and 6 (Chun Decl., Ex. A).)  As demonstrated above, Plaintiff cannot establish that she was subjected to any retaliatory actions as a result of her April 22, 2017 complaint.

**I.      No Genuine Dispute of Material Fact Exists Regarding Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Negligent Hiring - Training (Seventh Cause of Action).**

Plaintiff alleges that the County negligently failed to train and supervise Cox and that this resulted in Cox revealing confidential information about Plaintiff to Simmons, which violated Plaintiff's constitutional rights.  Plaintiff's claim is meritless given that a Section 1983 claim cannot be based on a claim of negligent training.  Rather, Plaintiff must show that the alleged failure to train amounts to a "deliberate indifference" to the rights of persons with whom Cox comes into contact.  (*City of Canton, Ohio v. Harris* (1989) 489 U.S. 378, 388.)  Here, Plaintiff can present no evidence that the County failed to train Cox let alone that it was deliberately indifferent in failing to do so.  (Pl. Depo. at 326:12-327:20 and Depo. Ex. 27 at Interrogatory

21

No. 7 (Chun Decl., Ex. A).)  In any event, as discussed above, Plaintiff cannot establish that Cox

disclosed information to Simmons so as to violate Plaintiff's constitutional rights.

### J.  Plaintiff's Claims Against Cox Should Be Dismissed As She Is Entitled to Qualified Immunity.

Assuming, *arguendo*, that Cox is found to have violated Plaintiff's constitutional rights,

she is nevertheless entitled to qualified immunity because her alleged conduct did not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known.  (*Coszalter*, 320 F.3d at 979.)  Moreover, even if the violated right was clearly

established at the time of the violation, it may be difficult for the defendant to determine how the

relevant legal doctrine will apply to the factual situation the defendant confronts.  Therefore, if

the defendant's mistake as to what the law requires is reasonable, the defendant is entitled to the

immunity defense.  (*Saucier v. Katz* (2001) 533 U.S. 194, 205; *Kennedy v. City of Ridgefield* (9th

Cir. 2006) 439 F.3d 1055, 1061; *Estate of Ford v. Ramirez-Palmer* (9th Cir. 2002) 301 F.3d

1043, 1050.)  Here, to the extent Cox's alleged actions are found to have violated Plaintiff's

constitutional rights, a reasonable jury could not find that she should have known that such

actions constituted violations of Plaintiff's constitutional rights.

### K.  Plaintiff's Claim For Punitive Damages Against Cox Is Meritless.

As a preliminary matter, Plaintiff seeks punitive damages against Cox under California

Civil Code § 3294.  (Plaintiff's FAC at ¶¶ 42, 47, 52, 57, 63, 71 and 82.)  However, Plaintiff's

claims are all based on federal law, and California Civil Code § 3294 only provides for punitive

damages under California law.  (Cal. Civ. Code § 3294.)  Plaintiff's claims for punitive damages

against Cox should, therefore, be dismissed.

Even if Plaintiff had properly asserted a punitive damages claim against Cox, her claim

fails because the alleged conduct by Cox did not rise to the level of oppressive conduct

demonstrating an evil motive or reckless indifference to Plaintiff's constitutional rights.  (*Smith v.*

*Wade* (1983) 461 U.S. 30, 56 ("We hold that a jury may be permitted to assess punitive damages

in an action under § 1983 when the defendant's conduct is shown to be motivated by evil

22

1    motive or intent, or when it involves reckless or callous indifference to the federally protected

2    rights of others."); *Dang v. Cross* (9th Cir. 2005) 422 F.3d 800, 807–09 (holding "that oppressive

3    conduct is a proper predicate for punitive damages under § 1983").)

4         Here, the alleged conduct by Cox, at most, constituted run-of-the-mill personnel decisions

5    that occur on a regular basis in nearly every workplace.  Indeed, the undisputed record shows that

6    Plaintiff and Cox were friends.  As discussed above, there is absolutely no evidence that Cox

7    retaliated against Plaintiff as a result of Plaintiff's April 22, 2017 complaint or that Cox violated

8    any of Plaintiff's constitutional rights.

9         Plaintiff's claim for punitive damages against Cox should, therefore, be dismissed.

10                        **V.    CONCLUSION**

11        For the foregoing reasons, Defendants respectfully request that this Court grant their

12   motion for summary judgment, or in the alternative, partial summary judgment.

13

14   DATED:  September 18, 2019          LAFAYETTE & KUMAGAI LLP

15                                        */s/ Brian H. Chun*
16                                        BRIAN H. CHUN
                                          Attorney for Defendants
17                                        COUNTY OF ALAMEDA and LORI COX

18

19

20

21

22

23

24

25

26

27                                                                                        23

28

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600