CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE ROAD, SUITE 212
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

ATTORNEYS FOR PLAINTIFF
SYLVIA SOUBLET

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA SOUBLET (aka SYLVIA MYLES),<br><br>        Plaintiff,<br><br>vs.<br><br>COUNTY OF ALAMEDA and LORI COX, in her Official and Individual Capacity, and DOES 1-50 inclusive,<br><br>        Defendants. | Case No. 18-cv-03738-JST<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF ALAMEDA AND LORI COX'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:       November 13, 2019<br>Time:       2:00 p.m.<br>Dept:       Courtroom 6, 2nd Floor<br>Judge:      Hon. Jon S. Tigar |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

RELEVANT FACTS ......................................................................................................... 1

LEGAL STANDARD........................................................................................................ 5

LEGAL ARGUMENT ...................................................................................................... 6

   I.    GENUINE ISSUES OF MATERIAL FACT EXISTS AFFIRMING THAT
     DEFENDANT COX WAS FINAL POLICYMAKER FOR PERSONNEL MATTERS SUCH
     THAT MUNICIPAL DEFENDANT IS LIABLE ................................................................ 6

     A.    The Evidence Proves There Is A Dispute Of Material Fact That Exists With Regard
      To Plaintiff's Section 1983 Claim For Violation Of The First Amendment By Defendant
      Cox Based On Her Illegal Action With Authority As A Final Policy Maker, Establishing
      *Monell* Mucipal Liability.  (First Cause Of Action). .............................................. 7

   II.   GENUINE ISSUES OF MATERIAL FACTS EXIST FOR PLAINTIFF'S FIRST
     AMENDMENT RETALIATION CLAIM WHERE THE 'CONTENT, FORM AND
     CONTEXT' OF PLAINTIFF'S SPEECH FIRMLY EVOKES A MATTER OF PUBLIC
     CONCERN .................................................................................................................... 10

     A.    The evidence proves there is a dispute of material fact that exists with regard to
      Plaintiff's Section 1983 Claim for Violation of the First Amendment because Ms. Soublet
      Engaged in Protected Speech (First Cause of Action) ........................................ 11

   III.   GENUINE ISSUES OF MATERIAL FACTS EXIST FOR PLAINTIFF'S FIRST
     AMENDMENT RETALIATION CLAIM WHERE DEFENDANTS CONDUCT DIRECTED
     AT PLAINTIFF CLEARLY CONSTITUTED ADVERSE EMPLOYMENT ACTIONS. ..... 12

   IV.   GENUINE ISSUES OF MATERIAL FACTS EXIST FOR PLAINTIFF'S FOURTH
     AMENDMENT RIGHT OF INFORMATIONAL PRIVACY CLAIM ................................ 15

     A.    The Evidence Proves There Is A Dispute Of Material Fact That Exists With Regard
      To Plaintiff's Section 1983 Claim For Violation Of The Fourth Amendment Right Of
      Privacy (Second Cause Of Action).................................................................... 16

   V.    GENUINE ISSUES OF MATERIAL FACT EXIST THAT PLAINTIFF HELD A
     PROPERTY RIGHT IN HER PROMOTION AND/OR IN A FAIR AND JUST
     PROCEDURE FOR PROMOTION SUCH THAT DEFENDANTS VIOLATED HER
     PROCEDURAL DUE PROCESS RIGHTS ................................................................ 17

   VI.   GENUINE ISSUES OF MATERIAL FACTS EXIST SUPPORTING PLAINTIFF'S
     LIBERTY INTEREST IN HER GOOD NAME AND REPUTATION ................................ 18

A.   The evidence proves there is a dispute of material fact that exists with regard to Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Liberty Interest (Fourth Cause of Action). ................................................................................................ 18

VII.   GENUINE ISSUES OF MATERIAL FACTS EXIST ESTABLISHING THAT DEFENDANT COUNTY ENGAGED IN DELIBERATE INDIFFERENCE TO DEFENDANT COX'S CONDUCT THEREBY EFFECTIVELY ENCOURAGING SUCH CONDUCT ................................................................................................................... 20

A.   The Evidence Herein Proves There Is A Dispute Of Material Fact That Exists With Regard To Plaintiff's Section 1983 Claim For Violation Of The Fourteenth Amendment – Retaliation (Fifth Cause Of Action) ................................................................. 20

A.   The Evidence Herein Proves There Is A Dispute Of Material Fact That Exists With Regard To Plaintiff's Section 1983 Claim For Violation Of The Fourteenth Amendment – Ratification (Six Cause Of Action) ................................................................... 22

B.   The Evidence Herein Proves There Is A Dispute Of Material Fact That Exists With Regard To Plaintiff's Section 1983 Claim For Violation Of The Fourteenth Amendment – Negligent Hiring –Training 42 U.S.C. § 1983 (Seventh Cause Of Action) ......................... 22

VIII.   QUALIFIED IMMUNITY IS FORECLOSED WHERE A REASONABLE DIRECTOR IN DEFENDANT COX'S SHOES WOULD HAVE KNOWN THAT RETALIATING AGAINST A PUBLIC EMPLOYEE FOR HER SPEECH VIOLATED THAT EMPLOYEES FIRST AMENDMENT RIGHTS ........................................................ 23

A.   The evidence herein proves there is a dispute of material fact that Plaintiff's claim for punitive damages against Cox and this claim should not be dismissed. ............................... 25

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Scribner*, 812 F.2d 426, 429(9th Cir. 1987) ............................................... 24

*Allen v. Scribner*, 812 F.2d 426, 430-36 (9th Cir. 1987) ............................................. 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255(1986) ........................................... 5

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741(2011) ........................................................ 23

*Breiner v. Nev. Dep't of Corr.*, 610 F.3d 1202 (9th Cir. 2010)......................................... 12

*Brodheim v. Cry,* 584 F.3d 1262, 1270 (9th Cir. 2009)................................................. 24

*Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) ..................................... 12

*Brown v. City of Caldwell* 2012 U.S.Dist.LEXIS 35314, at *22) (D.Idaho Mar. 14, 2012) ........ 23

*Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) ........................... 12

*Chavez v. United States,* 683 F.3d 1102, 1110 (9th Cir. 2012) ........................................ 24

*Connick v. Myers,* 461 U.S. 138, 146(1983)........................................................ 9, 10

*Cooper v. Dupnik,* 924 F.2d 1520, 1532 (9th Cir. 1991)................................................ 18

*Covey v. Hollydale Mobilehome Estates,* 116 F.3d 830, 834 (9th Cir. 1997) ........................... 5

*Crowe v. County of San Diego,* 608 F.3d 406, 444 (9th Cir. 2010) ................................... 19

*Delia v. Benton County* 2006 U.S.Dist.LEXIS 87435, at *5-6(D. Or Nov. 29, 2006) .................. 6

*Desrochers v. City of San Bernardino,* 572 F.3d 703, 714-16 (9th Cir. 2009)......................... 10

*Doe v. Att'y Gen.,* 941 F.2d 780, 796 (9th Cir. 1991) ............................................... 15

*Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir. 2009)................................................ 24

*First Nat'l Bank v. Cities Service Co.,* 391 U.S. 253, 288-289(1968) ................................ 5

*Floyd v. City of New York,* 959 F.Supp.2d 540, 564(S.D.N.Y 2013)................................. 20

*Gillette v. Delmore,* 979 F.2d 1342, 1346-47 (9th Cir. 1992) ........................................ 6

*Goodisman v. Lytle,* 724 F.2d 818, 820 (9th Cir.1984) ............................................. 17

*Gordon v. City of N.Y.,* 2015 U.S. Dist. LEXIS 70915, 2015 WL 3473500, at *12 (S.D.N.Y. June 2, 2015)......................................................................................... 18

*Greisen v. Hanken* 925 F.3d 1097, 1108-1109(9th Cir. 2019) ...................................... 23

*Greisen v. Hanken* 925 F.3d 1097, 1112-1113(9th Cir. 2019) ...................................... 23

*Henry v. County of Shasta,* 132 F.3d 512, 520 (9th Cir. 1997) ................................... 20, 21

*Hernandez v. Gates,* 100 F.Supp.2d 1209, 1218 (C.D. Cal 2000)..................................... 19

*Hyland v. Wonder,* 117 F.3d 405, 414 (9th Cir. 1997) ...................................... 6, 19, 24

*In re Crawford,* 194 F.3d 954, 958 (9th Cir. 1999) ................................................. 15

*Kortan v. Cal. Youth Authority,* 217 F.3d 1104, 1112-13 (9th Cir. 2000)) ........................... 14

*LaLonde v. Cnty. of Riverside,* 204 F.3d 947, 953 (9th Cir. 2000)................................... 25

*Leung v. City and Cty. of San Francisco*, 2007 U.S. Dist. LEXIS 93907, 2007 WL 4570254 (N.D. Cal. Dec. 21, 2007) ...................................................................... 16

*Lull v. Cty. of Sacramento,* 2019 U.S.Dist.LEXIS 154417, at *13 (E.D.Cal. Sep. 10, 2019)...... 23

*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587(1986) ................................ 4

*McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir. 1983)................................... 10

*McMillian v. Monroe Cnty.*, 520 U.S. 781, 785-86(1997) ...................................................... 6

*Millea v. Metro-N. R.R.*, 658 F.3d 154, 164-65 (2d Cir. 2011) ............................................... 12

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle* (1977) 429 U.S. 274, 283. As of 2016 .......... 23

*Nat'l Aeronautics and Space Admin. v. Nelson,* 562 U.S. 134, 162(2011) ................................. 15

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114(2002) ............................................ 12

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) .... 5

*Nunez v. City of Los Angeles,* 147 F.3d 867, 873 (9th Cir. 1998) ............................................. 17

*O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) ...................................................................... 15

*Paul v. Davis*, 424 U.S. 693, 701 (1976) ............................................................................... 18

*Pearson v. Callahan,* 555 U.S. 223, 129 S. Ct. 808, 815(2009) ............................................... 25

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480(1986) ......................................................... 6

*Pickering v. Board of Educ.*, 391 U.S. 563, 574(1968). ......................................................... 24

*Ray v. Henderson,* 217 F.3d 1234, 1240-41 (9th Cir. 2000) .................................................... 12

*Ricci v. DeStefano,* 557 U.S. 557, 129 S.Ct. 2658, 2671(2009) .............................................. 12

*S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) ......................................... 23

*Skelly v. State Personnel Board*, 15 Cal. 3d 194 (Cal. 1975) ................................................. 17

*Starrett v. Wadley* 876 F.2d 808, 820(10th Cir. 1989) ........................................................... 6

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) ........ 4

*Taketa v. United States*, 923 F.2d 665, 670 (9th Cir. 1991) .................................................... 15

*Thorne v. City of El Segundo*, 726 F.2d 459 (9th Cir. 1983) .................................................. 15

*Vasquez v. Cty. of L.A.*, 349 F.3d 634 (9th Cir. 1998) ............................................................ 12

*Voigt v. Savell* 70 F.3d 1552, 1559-1560 (9th Cir. 1995) ....................................................... 10

*Wheaton v. Webb-Petett*, 931 F.2d 613, 617 (9th Cir. 1991) .................................................. 18

*White v. Pauly*, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) .............................................. 23

*Wisconsin v. Constantineau,* 400 U.S. 433, 437(1971) .......................................................... 17

*Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987) ...................................................... 12

**Statutes**

California Government Code §12920 .................................................................................. 11

F.R.Civ.P. 56 .................................................................................................................. 4

1

## RELEVANT FACTS[1]

2  Lori Cox and Olis Simmons are good friends.  While Ms. Simmons was at one time an

3 Alameda County employee, as of March, 2017 she was not an employee of the County of

4 Alameda (Bonner Dec Ex 1: Cox Depo. 11:24-14:14, 16:15-17:17). Cox admits in her deposition

5 that around March, 2017, she had discussions with Ms. Simmons about Ms. Soublet, that

6 included confidential information related Ms. Soublet's employment with the county.  (Bonner

7 Dec Ex 1: Cox Depo. 17:18-24:25, 35:14-16; 38:5-40:15; 42:20-44:9; 72:8-18; Cox Depo.

8 Exhibit 1; Bonner Dec Ex 2: Soublet Depo 166:21-169:8, 175:15-184:10).   Defendant Cox

9 shared with Ms. Simmons the fact that Ms. Soublet had had a heart attack and facts related to

10 Ms. Soublet's work-related behavior.  (Bonner Dec Ex 1: Cox Depo. 46:10-47:2; Soublet Depo

11 175:15-184:10) On March 17, 2017, Ms. Simmons publicly relayed confidential employment

12 personal, HIPAA and confidential personnel information obtained from Defendant Cox to a

13 group of people at the home of Jimmy and Regina Jones during a somber gathering for Regina

14 Jones' life transition. (S. Soublet Dec.¶1; B. Soublet Dec. ¶9-12)

15  After an independent investigation found that Ms. Cox shared Ms. Soublet's confidential

16 information, in violation of county policy, Ms. Cox was required attend trainings on the

17 County's confidentiality policies conducted by Donna Ziegler, county counsel, as form of

18 discipline for the violation. (Bonner Dec Ex 1: Cox Depo. 26:1-30:22; 38:18-25, 53:13-22, 68:2-

19 6; Bonner Dec Ex 3 September letter re outcome of investigation).  The fact that Ms. Cox went

20 through the training as discipline will remain in her personnel file for five years.  (Bonner Dec

21 Ex 1: Cox Depo. 39:13-24). Prior to the training sessions with County Counsel Ziegler, Ms. Cox

22 had only received the two-hour online training on Personal Identifying Information. (Bonner Dec

23 Ex 1: Cox Depo. 30:23-32:3).  In her prior, county mandated trainings, Ms. Cox had never

24 learned exactly what information was confidential. (Bonner Dec Ex 1: Cox Depo. 154:6-17)

25  One of the complaints Ms. Soublet brought to the County Board of Supervisors on April

26 22, 2017 was that Ms. Cox shared Ms. Soublet's personnel information. (Bonner Dec Ex 1: Cox

27

28 [1] Ms. Soublet hereby incorporate the Statement of Facts in her First Amended Complaint for Damages (Dkt/ #7) as though fully set forth herein. (S. Soublet Dec.¶1)

1   Depo. 42:13-19; Soublet Dec Ex A). Ms. Cox learned about the April 22, 2017 complaint from

2   County Counsel, Donna Ziegler and eventually received and read the entire complaint.  (Bonner

3   Dec Ex 1: Cox Depo. 62:21-63:11). Ms. Cox was interviewed as part of the independent

4   investigation.  (Bonner Dec Ex 1: Cox Depo. 32:8-21)  Ms. Cox received a letter informing her

5   that the investigation concluded that she had violated County policy.  (Bonner Dec Ex 1: Cox

6   Depo. 74:9-75:19). Ms. Cox was not surprised by the findings of the independent investigation

7   because Ms. Cox admitted that she shared Ms. Soublet's personal information.  (Bonner Dec Ex

8   1: Cox Depo. 40:4-18).  The investigators contacted Ms. Simmons but she refused to participate.

9   (Bonner Dec Ex 1: Cox Depo.  49:2-4, 50:25-51:7)

10         Many of Ms. Cox supervisors, including the county executive and members of the board

11  of supervisors found out about the findings that Ms. Cox violated county policy. (Bonner Dec Ex

12  1: Cox Depo. 54:18-59:12; 60:25-61:8, 67:11-70:18)    Ms. Cox admitted that she was

13  embarrassed that she had made a mistake by violating County policy. (Bonner Dec Ex 1: Cox

14  Depo.58:17-59:12)

15         On January 18, 2018, only four months after the September 2017 letter informing Ms.

16  Cox that in independent investigation found that she had violated County Policy by disclosing

17  confidential information about Ms. Soublet, Ms. Cox gave Ms. Soublet a formal letter of

18  reprimand. (Bonner Dec Ex 1: Cox Depo. 74:9-75:18, 101:7-102:8; Bonner Dec Ex 4: January

19  18 letter of reprimand).  Ms. Cox chose not to use a lesser form of discipline, which she had the

20  discretion to do. (Bonner Dec Ex 1: Cox Depo. 102:9-103:5).

21         After Ms. Cox became Ms. Soublet's supervisors, Ms. Soublet's job responsibilities

22  significantly expanded. (Bonner Dec Ex 2: Soublet Depo: 51:5-54:6)  Prior to April 22, 2017,

23  during her time as Ms. Soublet's supervisor, Ms. Cox had only given her two performance

24  conference memos that simply indicate that there is a performance concern to put the employee

25  on notice of a concern. (Bonner Dec Ex 1: Cox Depo. 104:8-107:2).

26         Ms. Cox claims that she gave Ms. Soublet the January 18, 2018 letter of reprimand

27  because Ms. Soublet did not attend a meeting Ms. Cox directed her to attend. (Bonner Dec Ex 1:

28  Cox Depo. 107:17-24).  However, Ms. Soublet was, in fact present at the meeting. (Bonner Dec

Ex 1: Cox Depo. 107:25-108:8).   Moreover, the whole purpose for the meeting was for Ms. Soublet to discuss *her* concerns and *her* questions about *her* classifications.  (Bonner Dec Ex 1: Cox Depo. 118:17-24).  Ms. Soublet was the driving force behind the meeting.  *Id*.  Moreover, the meeting started in a hallway, where Ms. Soublet was not comfortable discussing serious confidential personnel matters with Ms. Cox and Mr. Joe Angelo, who Ms. Cox had not introduced to Ms. Soublet.  (Bonner Dec Ex 1: Cox Depo. 107:17-128:2).  After the meeting moved to a private room, Ms. Soublet continued to discuss confidential personnel matters without ever introducing Ms. Soublet to Mr. Angelo.  *Id.*  The meeting itself was about Ms. Soublet's request for a reclassification, which Ms. Soublet had been discussing since 2012.  *Id.*

The only purpose of the meeting was to discuss Ms. Soublet's request for reclassification, as Ms. Cox documented in the letter regarding the reprimand. (Bonner Dec Ex 1: Cox Depo. 128:10-129:11; Bonner Dec Ex 4).  Ms. Soublet's only request was to be provided something in writing. (Bonner Dec Ex 1: Cox Depo. 128:10-132:20; Bonner Dec Ex 2 Soublet Depo. 241:9-244:10).   Further, contrary to Ms. Cox's reprimand for insubordination, Ms. Cox memo regarding the meeting documented Ms. Soublet's participation in the meeting, which Ms. Cox further admits in her deposition.  *Id.*  Additionally, Ms. Cox memo and therefore the basis of the reprimand, contain false statements of facts regarding what occurred during the meeting. (Bonner Dec Ex 1: Cox Depo. 134:3-135:9; Bonner Dec Ex 5: January 31, 2018 response to letter of reprimand).

Following the finding that Ms. Cox violated county policy by discussing Ms. Soublet's confidential personal matters, Ms. Cox initiated further disciplinary action against Ms. Soublet by fabricating a complaint by Ms. Marzella Cleveland, a service provider. (Bonner Dec Ex 1: Cox Depo. 141:17-142:19, 144:20-161:8). After initially completing an investigation into Ms. Cleveland's concerns on or about February 21, 2019, the investigation was re-opened for the sole purpose of making a negative finding against Ms. Soublet.  (Bonner Dec Ex 1: Cox Depo. 148:17-152:2; Bonner Dec Ex 7: Communications between Marzella Cleveland and SSA).  The underlying incident occurred in December 2018, when Ms. Marzella Cleveland, a partner who assisted with a county program for veterans, was present at the County's San Pablo office when a

1 County employee accused her trespassing and called the Sheriff's Department. (Bonner Dec Ex

2 1: Cox Depo. 152:3-153:22).  Ms. Soublet was not present in the building or in Oakland, at the

3 time of the interaction and the woman who called the Sheriff's department was not Ms. Soublet's

4 direct report.   (S. Soublet Dec.¶15)  After the incident, Ms. Soublet, followed up with Ms.

5 Marzella Cleveland regarding the incident to the full and complete satisfaction of Ms. Clevland.

6 (Bonner Dec Ex 1: Cox Depo. 158:20-161:8; Bonner Dec Ex 11: Declaration of Marzella

7 Cleveland).  Despite the fact that Ms. Soublet's response fully satisfied Ms. Cleveland, Ms. Cox

8 and the County found that Ms. Soublet violated county policy. (Bonner Dec Ex 1: Cox Depo.

9 154:11-157:1; Bonner Dec Ex 10: Communications between SSA HR and Ms. Soublet).  County

10 made this finding despite never asking Ms. Cleveland about Ms. Soublet's conduct.  (Bonner

11 Dec Ex 1: Cox Depo. 159:19-160:4; Bonner Dec Ex 11: Declaration of Marzella Cleveland).

12 Ms. Soublet has known Ms. Cox professionally for approximately fifteen years. She would

13 not characterize their relationship as one of a personal friendship. The "were" friends at one time.

14 Over the past three or four years Ms. Soublet's professional relationship with Ms. Cox began to

15 change.  (Bonner Dec Ex 2: Soublet Depo. 67:17-68:23) Ms. Soublet has tried to maintain a

16 professional or collegial friendly relationship with Ms. Cox but that has evolved over time. Ms.

17 Soublet has not maintained a personal friendship as she commonly defines a friendship. For

18 example, they do not visit each other's homes, socialize together outside of work or even in the

19 work environment for that matter. (S. Soublet Dec.¶10)

20 In her deposition Ms. Cox made the following admissions: (a) That she had not received

21 training that county policy required that confidential personnel information should be protected.

22 (Cox Depo.:53:4 -54:-17); (b) That there was a finding that she had violated County policy (Cox

23 Depo.:67:20 – 23); (c) That she informed Supervisor Wilma Chan that she had shared Ms.

24 Soublet's personal information.   Cox Depo.:68:17 - 25; (d) That she had revealed personal

25 confidential information to Ms. Simmons. (Cox Depo.:77: 6 – 23); (e; That prior to the training

26 she was required to attend as a result of her sharing of my confidential information, she had not

27 received training that was to the extent of the training she was receiving. (Cox Depo.:53:18 –

28 54:17:);

1

## LEGAL STANDARD

2       Summary judgment is only appropriate when the movant shows "there is no genuine

3   dispute as to any material fact and the movant is entitled to judgment as a matter of law."

4   F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587(1986); *T.W.*

5   *Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). On

6   summary judgment, a court must decide whether there is a "genuine issue as to any material

7   fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(a),(c);

8   *Covey v. Hollydale Mobilehome Estates,* 116 F.3d 830, 834 (9th Cir. 1997). Credibility

9   determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

10  facts are jury functions, not those of a judge when ruling on a motion for summary judgment.

11  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255(1986). The evidence of the party opposing

12  summary judgment is to be believed and all reasonable inferences that may be drawn from the

13  facts before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255;

14  *Matsushita*, 475 U.S. at 587. The inquiry is "whether the evidence presents a sufficient

15  disagreement to require submission to a jury or whether it is so one-sided that one party must

16  prevail as a matter of law." *Anderson,* 477 U.S. at 251-252.

17      To carry its burden of production on summary judgment, a moving party "must either

18  produce evidence negating an essential element of the nonmoving party's claim or defense or

19  show that the nonmoving party does not have enough evidence of an essential element to carry

20  its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies,*

21  *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). As to materiality, the substantive law will identify

22  which facts are material. Only disputes over facts that might affect the outcome of the suit under

23  the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at

24  248. If a moving party fails to carry its initial burden of production, the nonmoving party has no

25  obligation to produce anything, even if the nonmoving party would have the ultimate burden of

26  persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103. Similarly, if the nonmoving party

27  produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats

28  the motion. *Nissan Fire*, 210 F.3d at 1103; *First Nat'l Bank v. Cities Service Co.,* 391 U.S. 253,

288-289(1968) (the amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial).

## LEGAL ARGUMENT

I.   **GENUINE ISSUES OF MATERIAL FACT EXISTS AFFIRMING THAT DEFENDANT COX WAS FINAL POLICYMAKER FOR PERSONNEL MATTERS SUCH THAT MUNICIPAL DEFENDANT IS LIABLE**

Primarily, the Supreme Court has held that municipal liability may be based on a single decision by a municipal official who has final policymaking authority. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480(1986)(a single act or decision by a final policymaker can lead to *Monell* liability, because "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly). Liability "attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Praprotnik*, 485 U.S. at 127. For purposes of municipal liability, a final policymaker must act in a capacity other than by merely exercising discretion in that area. *Pembaur,* 475 U.S. at 481-82.

Where a policymaker delegates its policymaking authority to another official which results in insulating the government from liability, then such delegation is unavailing in evading liability. Thus, where for example, a County Board of Commissioners delegates its power to establish final employment policy to a Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability. *Pembaur*, 475 U.S. at 483 n.12. As such, delegation of personnel policy is effectually ratification where a delegee's unconstitutional decision or action inures to the 'final policymaker' and thereby the municipality itself. *Gillette v. Delmore,* 979 F.2d 1342, 1346-47 (9th Cir. 1992). *See also Hyland v. Wonder,* 117 F.3d 405, 414 (9th Cir. 1997) ("a plaintiff may show that an official policymaker either delegated policymaking authority to a subordinate or ratified a subordinate's decision, approving the decision and the basis for it").

Lastly, final policymaking status for personnel matters exist where delegation of

1    personnel decisions is final and not subject to review, *See McMillian v. Monroe Cnty.*, 520 U.S.
2    781, 785-86(1997),[2] and municipal policy could be established where a final policymaker creates
3    a hostile working environment. *Starrett v. Wadley* 876 F.2d 808, 820(10th Cir. 1989).

4         Under the Alameda County Administrative Code ("Administrative Code"), Chapter 2.102
5    Social Services Agency, the executive officer of the agency is the director of social services
6    appointed by the board of supervisors. Administrative Code 2.102.020. Similarly, "it is the intent
7    of the board of supervisors that the director of social services shall perform or cause to be
8    performed all duties heretofore vested in the county welfare director and the executive director of
9    the human relations department. *Id.* at 2.102.030. The Administrative Code makes clear that the
10   Director of the Social Service Agency("SSA") is delegated broad and final powers "where the
11   director shall be in charge of and responsible for the coordination and direction of the social
12   services agency and any other programs in the human resources field which the board of
13   supervisors may in the future assign to the agency. *Id.* at 2.102.040.

14        Where like here, a municipality delegates personnel or employee matters to a director,
15   i.e., official policymaker and that official policy is utilized in a retaliatory manner, municipal
16   liability is established. *See, Pembaur*, 475 U.S. at 483 n.12.; *Leal v. Corpus Christi-Nueces Cnty.*
17   *Pub. Health Dist.* 647 F.App'x 514, 515(5th Cir. 2016).

18       **A.   The Evidence Proves There Is A Dispute Of Material Fact That Exists With**
19            **Regard To Plaintiff's Section 1983 Claim For Violation Of The First**
             **Amendment By Defendant Cox Based On Her Illegal Action With Authority As**
20            **A Final Policy Maker,.  (First Cause Of Action).**

21        The following disputed issues of material fact clearly establish that Defendant Cox, as the
22   SSA Director was delegated and thus, held final policymaking authority over the retaliatory
23   personnel incursions that Plaintiff was subjected to and as such, under well settled law,
24   Defendant County of Alameda is municipally liable.

25   _____
26   [2] In *Delia v. Benton County* 2006 U.S.Dist.LEXIS 87435, at *5-6(D. Or Nov. 29, 2006), the
     District court denied summary judgment as issues of fact existed as to whether the County
27   Commissioners retained authority over final personnel decisions which was integral in
28   determining final policymaker status.

Ms. Cox's job description states she is a policy maker: The job description clearly states: "This is a single Position classification which operates at the ***highest policy making level a***nd is responsible for advising and making recommendations to the Board of Supervisors." [Emphasis added]. (B. Soublet Dec. ¶¶ 13-14, Exhibit "B" to Dec) At the Alameda County Civil Service Commission Hearing, Defendant Cox testified she was prepared to create a position that captured the depth and breadth of Ms. Soublet's job responsibilities as a part of her vision. (B. Soublet Dec. ¶¶1-8)

In her deposition Ms. Cox testified that, "she cannot create positions, but that she can appoint people to existing position, and she has the authority to hire people." (Cox Depo 33: 18-25,134:1-2.) In fact, Ms. Cox recently approved and supported the creation of a new position in the Department of Workforce and Benefits Administration titled: "Divisional Operations Services Manager." According to the Job classification history listed on the County's Human Resources website the position has the following Class Specifications History.

**New Specifications:**
**04/26/2018**
**Civil Service Commission Date: 08/29/2018**

This position did not exist within the County prior to 8/29/2018. It is identified as a single classification within the Social Services Agency, ***only***. This position could not and would not have been created without the support and direction of Director Ms. Cox. (S. Soublet Dec.¶ ¶21-22) As a final policy maker for the County, Ms. Cox has the authority to discipline employees under her supervision. In the case of the letter of reprimand, Ms. Cox wrote and signed the letter and had it placed in Ms. Soublet's personnel file. Nowhere in this process did she seek or obtain the approval of the Board of Supervisors in order to implement disciplinary action. The letter of reprimand constitutes an adverse personnel action as it remains in Ms. Soublet's official personnel file for five (5) years. (S. Soublet Dec.¶47)

Ms. Cox is afforded a great deal of latitude in her decision-making authority as a final policy maker for the County of Alameda. On July 18, 2018, at the conclusion of a Senior Management meeting in Hayward, Ms. Cox asked to meet with Ms. Soublet, Andrea Ford, Assistant Agency Director WBA and Denise Robinson, Human Resources Director for the

Social Services Agency. She informed the group that she was creating a job for Aisha Brown, Chief of Staff for Supervisor Keith Carson, and also a very close personal friend of Ms. Cox. She explained that she had been on several late-night phone calls with Susan Muranisi, County Administrator and Joe Angelo, Director, County Human Resources, about finding a new position within the County for Aisha Brown and doing so immediately.  She stated that Supervisor Carson wanted to ensure that the identified employment option did not result in a salary decrease for Ms. Brown.  (S. Soublet Dec.¶¶22-23)

        In the presence of Andrea Ford and Denise Robinson, Ms. Cox informed the group that she was relieving Ms. Soublet of job responsibilities as lead coordinator for the Agency's homeless efforts with County departments to create a job for Ms. Brown in the Social Services Agency.  She stated: "You all know that Aisha and I are friends so for that reason she cannot report directly to me.  Andrea, I am going to move homelessness to your [Ms. Soublet] shop and Aisha can lead that effort which I think would be a good fit."  Ms. Soublet asked Ms. Cox if they were allowed to ask questions and she said yes.  Ms. Soublet asked if she knew the impetus for the abrupt and urgent need to relocate Aisha and she replied no.  She said what she did know was that it needed to happen immediately, and that Aisha would be placed in a Project position with some of Ms. Soublet's duties that she described.  Needless to say, Ms. Soublet was a shock.  (S. Soublet Dec.¶22-13)  Another example of final policy maker independent action, Ms. Cox permitted the Policy Director to take advantage of an alternate work schedule during her probationary period, affording her the ability to start her workday at 9:00 a.m. This accommodation was in direct violation of County policy requiring adherence established County schedules rather that flexible time.   As a policy maker, Ms. Cox exercised her authority to vary the county policy, without approval from the BOS. As to Ms. Soublet, Ms. Cox strictly enforced the County time schedule. (S. Soublet Dec.¶68)

        Thus, the Defendants' motion for summary judgment must be denied because this adduced evidence shows a dispute of the material fact regarding County's liability based of Defendant Cox being a final policy maker, establishing *Monell* Municipal liability.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**II.     GENUINE ISSUES OF MATERIAL FACTS EXIST FOR PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM WHERE THE 'CONTENT, FORM AND CONTEXT' OF PLAINTIFF'S SPEECH FIRMLY EVOKES A MATTER OF PUBLIC CONCERN**

As a public employee's speech is protected where he or she speaks on a matter of public concern, such speech is defined as a matter that fairly relates to political, social or other aspects of the community. *Connick v. Myers*, 461 U.S. 138, 146(1983)(speech relating to *purely* personal or internal administrative matters is not of a 'public concern'). Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48. Employee expression that can be fairly considered as relating to a matter of political, social, or other concern to the community may be characterized as speech involving a matter of public concern. *Id.* at 146.

Here, contrary to Defendants' assertions and belied by the Plaintiff's disputed material facts, Plaintiff's speech was by no means a  "mere extension" of Plaintiff's dissatisfaction with Director Cox nor could its 'ultimate source' be "traced to the simple fact that [plaintiff] and [Director Cox] did not get along." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 714-16 (9th Cir. 2009).  To the contrary, Plaintiff and Director Cox were long standing friends and but for Director Cox's contribution to perpetuating a hostile work environment, Plaintiff would have not felt the responsibility of speaking out as such conduct was unequivocally contrary to the mission of the SSA and as such, was information that was highly "relevant to the public's evaluation" of the Agency's performance. *Allen v. Scribner,* 812 F.2d 426, 430-36 (9th Cir. 1987). The public has absolutely an interest in knowing whether the SSA treats its staff fairly. *See McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir. 1983)(speech concerning information needed by members of society to make informed decisions about the operation of their government warrants First Amendment protection). Nevertheless, to the extent that Plaintiff's speech included her own hostile treatment, such personal treatment does not categorically defeat its relevance as a matter of public concern. Such 'mixed' speech has been expressly recognized by the Ninth Circuit. *See, Voigt v. Savell* 70 F.3d 1552, 1559-1560 (9th Cir. 1995).

1    Thus, the following issues of disputed material facts that speak to the "content, form, and
2    context" of plaintiff's speech are hereby set out below. *Connick*, 461 U.S. at 147-48.

3    **A.   The evidence proves there is a dispute of material fact that exists with regard to**
         **Plaintiff's Section 1983 Claim for Violation of the First Amendment because**
4        **Ms. Soublet Engaged in Protected Speech (First Cause of Action)**

5
6    On or about April 22, 2017, Ms. Soublet engaged in Protected Speech by filing a formal
7    complaint against Defendant Cox in her role as Director of the Alameda County of Social
8    Services Agency and as her direct supervisor, and against the Alameda County Board of
9    Supervisors, alleging hostile work environment, abuse of power, disparate treatment and
10   violation of personnel practices.   She alleged violations of her rights under state and federal law
11   and the United States Constitutions   Her complaint was filed as a result of her desire to work in
12   a workplace free of discrimination and hostility required by the expressed public policy
13   embodied in the 1964 Civil Rights Act, Title VII, and the California Fair Employment and
14   Housing Act ("FEHA").  S. Soublet Dec Ex A: April 2017 Complaint. All of the matters alleged
15   in her complaint are matters of public concern as they violated state and federal laws requiring
16   the work environment to be free from all forms of harassment, discrimination and that the
17   privacy rights of employees be maintained. (S. Soublet Dec.¶11) California Government Code
18   §12920 makes the public declaration of the public policy of the laws prohibiting all forms of
19   discrimination in the work place:

20       "It is hereby declared as the ***public policy*** of this state that it is necessary to
21       protect and safeguard the right and opportunity of all persons to seek, obtain, and
         hold employment without discrimination or abridgment on account of race,
22       religious creed, color, national origin, ancestry, physical disability, mental
         disability, medical condition, marital status, sex, age, or sexual orientation."
23       [Emphasis added]

24   Hence, Defendants' motion for summary judgment must be denied since the evidence
25   proves there is a dispute of material fact that exists with regard to Plaintiff's Section 1983 Claim
26   for Violation of the First Amendment because Ms. Soublet Engaged in Protected Speech (First
27   Cause of Action).  Ms. Soublet made the complaint because she wanted to inform the Board of

28

1 Supervisors that the Ms. Cox's management behavior was impacting County employees.
2 Bonner Dec Ex 2: Soublet Depo 185:12-189:15.

3 **III.    GENUINE ISSUES OF MATERIAL FACTS EXIST FOR PLAINTIFF'S FIRST**
4 **AMENDMENT RETALIATION CLAIM**

5      An adverse employment action includes any activity that a reasonable employee would
6 have found materially adverse and would have dissuaded a reasonable worker from making or
7 supporting a charge of discrimination. *Burlington Northern and Santa Fe Ry. Co. v. White,* 548
8 U.S. 53, 68 (2006). Although an objective standard, "[c]ontext matters. The real social impact of
9 workplace behavior often depends on a constellation of surrounding circumstances, expectations,
10 and relationships…. An 'act that would be immaterial in some situations is material in others."
11 *Id.* at 69.

12      As the Ninth Circuit takes a fairly broad view of the phrase. 'adverse employment
13 action,' *Ray v. Henderson,* 217 F.3d 1234, 1240-41 (9th Cir. 2000) denial of a promotion clearly
14 qualifies as an adverse employment action. *See, Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.
15 101, 114(2002)(failure to promote is a classic example of an adverse employment action); *Ricci*
16 *v. DeStefano,* 557 U.S. 557, 129 S.Ct. 2658, 2671(2009)(finding for plaintiffs who "were denied
17 a chance at promotions"); *see also, Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir.
18 2000)(refusal to promote is among the employment decisions that may constitute an adverse
19 employment action); *Breiner v. Nev. Dep't of Corr.*, 610 F.3d 1202 (9th Cir. 2010)("a denied
20 promotion, even if only temporarily, represents an adverse employment action.")

21      Similarly, under Ninth Circuit law, a letter of reprimand may also constitute an adverse
22 employment action. *See Vasquez v. Cty. of L.A.*, 349 F.3d 634 (9th Cir. 1998) (assuming for
23 purposes of prima facie case that the issuance of a warning letter constituted an adverse
24 employment action); *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987) ("undeserved
25 performance ratings, if proven, would constitute 'adverse employment decisions); *Millea v.*
26 *Metro-N. R.R.*, 658 F.3d 154, 164-65 (2d Cir. 2011)(a formal reprimand could qualify as a
27 "materially adverse" action, even if it did not "directly or immediately result in any loss of wages
28 or benefits" or become a permanent part of the employee's file, because "it can reduce an

employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the employee to believe (correctly or not) that his job is in jeopardy")

**A. The evidence proves there is a dispute of material fact that exists with regard to Plaintiff's Section 1983 Claim for Violation of the First Amendment Plaintiff Was Subjected To An Adverse Employment Action Because of Her Complaint. (First Cause of Action)**

On January 18, 2018, only four months after the September 2017 letter informing Ms. Cox that in independent investigation found that she had violated County Policy by disclosing confidential information about Ms. Soublet, Ms. Cox gave Ms. Soublet a formal letter of reprimand. (Bonner Dec Ex 1: Cox Depo. 74:9-75:18, 101:7-102:8).  Ms. Cox chose not to use a lesser form of discipline, which she had the discretion to do. (Bonner Dec Ex 1: Cox Depo. 102:9-103:5).  Prior to April 22, 2017, during her time as Ms. Soublet's supervisor, Ms. Cox had only given her two performance conference memos that simply indicate that there is a performance concern to put the employee on notice of a concern. (Bonner Dec Ex 1: Cox Depo. 104:8-107:2).

The facts regarding Ms. Cox legitimate business reason provide clear evidence of pretext. Ms. Cox claims that she gave Ms. Soublet the January 18, 2018 letter of reprimand because Ms. Soublet did not attend a meeting Ms. Cox directed her to attend. (Bonner Dec Ex 1: Cox Depo. 107:17-24).   However, this is false.   Ms. Soublet was, in fact, present at the meeting and participated. (Bonner Dec Ex 1: Cox Depo. 107:25-108:8; Bonner Dec Ex 2: Soublet Depo. 280:23-283:18).   Moreover, the whole purpose for the meeting was for Ms. Soublet to discuss *her* concerns and *her* questions about *her* classifications.  (Bonner Dec Ex 1: Cox Depo. 118:17-24). Ms. Cox turned Ms. Soublet's request for a meeting into an opportunity for a reprimanded by forcing Ms. Soublet to engage in a process that Ms. Cox knew Ms. Soublet was uncomfortable with. (Bonner Dec Ex 2: Soublet Depo. 275:2-22, 277:6-280:8) Ms. Cox engineered an outcome where she could punish Ms. Soublet for not participating in a meeting that was only for the benefit of Ms. Soublet.  (Bonner Dec Ex 2: Soublet Depo. 268:12-22)  This is clear pretext.  No other individual's issues were relevant to the meeting, Ms. Soublet both attended and participated in, yet, Ms. Cox used the opportunity to punish Ms. Soublet for the complaints Ms. Soublet made to the county that led to the adverse finding against Ms. Cox.

1    The pretext is even more apparent give the circumstances surrounding the meeting. On
2    two occasions prior to this meeting, Mr. Angelo had declined to meet with Ms. Soublet. (Bonner
3    Dec Ex 2: Soublet Depo. 250:18-251:12)  The meeting at issue in the reprimand started in a
4    hallway, where Ms. Soublet was not comfortable discussing serious confidential personnel
5    matters with Ms. Cox and Mr. Joe Angelo, who Ms. Cox had not introduced to Ms. Soublet.
6    (Bonner Dec Ex 1: Cox Depo. 107:17-128:2; Bonner Dec Ex 2: Soublet Depo. 283:22-287:6).
7    After the meeting moved to a private room, Ms. Soublet continued to discuss confidential
8    personnel matters without ever introducing Ms. Soublet to Mr. Angelo.  *Id.*  Ms. Cox's testimony
9    establishes that Ms. Soublet was not comfortable with the meeting that solely addressed Ms.
10   Soublet's personnel matter.  Given Ms. Cox history of sharing confidential information with
11   others, Ms. Soublet's concern was well founded.  A reasonable jury could find that calling Ms.
12   Soublet's conduct insubordination was simply untrue and clearly retaliatory.  Additionally, Ms.
13   Cox memo and therefore the basis of the reprimand, contain false statements of facts regarding
14   what occurred during the meeting.  (Bonner Dec Ex 1: Cox Depo. 134:3-135:9; Bonner Dec Ex
15   5: January 31, 2018 response to letter of reprimand; Bonner Dec Ex 2: Soublet Depo. 293:11-
16   295:13).  Using false information as the basis of a adverse action is the definition of pretext.

17   The letter of reprimand constitutes an adverse personnel action as it remains in Ms.
18   Soublet's official personnel file for five years.  Anyone who reviews Ms. Soublet's personnel file
19   will know that she was subjected to discipline. This is a stain on her career.  This act alone has
20   created an adverse impact on an otherwise stellar 25-year career with the county.  Prior to this
21   action, she had never been subject to any form of discipline throughout her 25 years of County
22   service. (S. Soublet Dec.¶ ¶37, 39, 40, 47-48, 53,56, 59-61,63,)*. Kortan v. Cal. Youth Authority,*
23   217 F.3d 1104, 1112-13 (9th Cir. 2000)) Ms. Soublet was subjected to an adverse employment
24   action because of her complaint. A disputed triable issue of material fact exists on this issue,
25   compelling this Court to deny Defendants' motion.

26   A separate adverse action was the adverse finding related to Ms. Marzella Cleveland.
27   Like the Angelo meeting discussed above, a reasonable jury could conclude that the adverse
28   finding regarding Ms. Marzella Cleveland was concocted by Ms. Cox to retaliate against Ms.

Soublet.  This is supported by the following evidence: 1) the investigation was closed and then re-opened for the sole purpose of making a finding against Ms. Soublet. (Bonner Dec Ex 1: Cox Depo. 148:17-152:2); 2) despite not being present in the building or in Oakland, at the time of the interaction and despite the fact that the woman who called the Sheriff's department was not Ms. Soublet's direct report, Ms. Soublet was the subject of the re-opened investigation (S. Soublet Dec.¶15; (Bonner Dec Ex 1: Cox Depo. 148:7-151:10; Bonner Dec Exs. 7-11)**;** 3) Ms. Soublet was found to have violated county policy when Ms. Cox could not define what policy she had violated (Bonner Dec Ex 1: Cox Depo.154:16-157:18); 4) The subject of the complaint, Ms. Marzella was completely satisfied with Ms. Soublet's conduct (Bonner Dec Ex 11: Declaration of Ms. Cleveland); and most damning, during the County's interview with Ms. Cleveland, the interviewer never mentioned Ms. Soublet's name. *Id* at ¶10.  How can the County make a finding regarding the service Ms. Soublet provided to Ms. Cleveland, if they never even ask Ms. Cleveland about her interactions with Ms. Soublet? Based on the last fact alone and Ms. Cleveland's declaration, a reasonable jury could conclude that the investigation into this matter was a fait accompli; the investigation designed solely to make a retaliatory adverse finding against Ms. Soublet.

## IV.    GENUINE ISSUES OF MATERIAL FACTS EXIST FOR PLAINTIFF'S FOURTH AMENDMENT RIGHT OF INFORMATIONAL PRIVACY CLAIM

Contrary to Defendants' misunderstanding of the breadth and reach of the Fourth Amendment, Plaintiff's right to privacy is integrally protected by the Fourth Amendment. The reasonableness of a government employee's expectation of privacy under the Fourth Amendment in his or her workplace was expressly addressed by the Supreme Court in *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987)(individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer). In *Ortega,* the Supreme court affirmed that public employer intrusions on the constitutionally protected privacy interests of government employees for non-investigatory, work-related purposes should be judged by the standard of reasonableness under all the circumstances." *Id.* at 725-26. All other intrusions are patently unreasonable. *See also, Nat'l Aeronautics and Space Admin. v. Nelson,* 562 U.S. 134,

162(2011)("the government's collection and dissemination of private information is regulated by the Fourth Amendment."); *Taketa v. United States,* 923 F.2d 665, 670 (9th Cir. 1991)(an employee holds a reasonable expectation of privacy in his workplace office, even though other employees had access to the office).

Again, Defendants' misunderstanding perhaps accounts for Defendants' matter of fact 'trampling' upon Plaintiff's privacy rights when such rights are certainly well established; i.e., the Constitution protects an "individual interest in avoiding disclosure of personal matters." *In re Crawford,* 194 F.3d 954, 958 (9th Cir. 1999). This interest covers a wide range of personal matters, including sexual activity, *Thorne v. City of El Segundo,* 726 F.2d 459 (9th Cir. 1983), and financial matters, *Crawford,* 194 F.3d at 958. In deciding a privacy claim, the court must "balance the government's interest in using and disseminating the information against the individual's interest in denying access." *Doe v. Att'y Gen.,* 941 F.2d 780, 796 (9th Cir. 1991)(court must weigh, among other things: "the type of [information] requested, . . . the potential for harm in any subsequent nonconsensual disclosure, . . . the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating towards access." *Id.*

### A. The Evidence Proves There Is A Dispute Of Material Fact That Exists With Regard To Plaintiff's Section 1983 Claim For Violation Of The Fourth Amendment Right Of Privacy (Second Cause Of Action).

Ms. Cox admitted that she also told Ms. Simmons, who is not an employee, and who is not privity to Ms. Soublet's personal, health and personnel confidential employment information, that Ms. Soublet had suffered a heart attack, which she happened on the job.  (Cox Depo.: 46:15 - 18.) (S. Soublet Dec.¶69-72) While Ms. Simmons was at one time an Alameda County employee, as of March, 2017 she was not an employee of the County of Alameda (Bonner Dec Ex 1: Cox Depo. 11:24-14:14, 16:15-17:17). Cox admits in her deposition that around March, 2017, she had discussions with Ms. Simmons about Ms. Soublet, that included confidential information related Ms. Soublet's employment with the county.  (Bonner Dec Ex 1: Cox Depo.

17:18-24:25, 35:14-16; 38:5-40:15; 42:20-44:9; 72:8-18Cox Depo. Exhibit 1).   After an independent investigation found that Ms. Cox shared Ms. Soublet's confidential information, in violation of county policy, Ms. Cox was required attend trainings on the County's confidentiality policies conducted by Donna Ziegler, county counsel, as form of discipline for the violation. (Bonner Dec Ex 1: Cox Depo. 26:1-30:22; 38:18-25, 53:13-22, 68:2-6).  Defendants' motion must be denied because Defendant Cox admitted she violated Ms. Soublet's HIPAA rights and other private confidential information, in Violation of the Fourth Amendment Right of Privacy.

## V.   GENUINE ISSUES OF MATERIAL FACT EXIST THAT PLAINTIFF HELD A PROPERTY RIGHT IN HER PROMOTION

To have a property interest in a benefit, a person clearly must have a legitimate claim of entitlement to it." *Leung v. City and Cty. of San Francisco*, 2007 U.S. Dist. LEXIS 93907, 2007 WL 4570254 (N.D. Cal. Dec. 21, 2007).

### A. The evidence proves there is a dispute of material fact that exists with regard to Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Due Process, Property (Third Cause of Action)

The California Supreme Court in *Skelly v. State Personnel Board*, 15 Cal. 3d 194 (Cal. 1975) ruled that the employee (Skelly) had a property interest in continued employment and hence could not be deprived of his job without the observance of due process. Here, Plaintiff most definitely held a interest in her good standing, free from discipline, and a property interest in Defendants' promise of a promotion. Throughout the four (4) year time frame of the pendency of Ms. Soublet reclassification request, Ms. Cox expressed in words and action her commitment to create a position after the HR denied the reclass appeal.  After Ms. Soublet filed her complaint with the Board of Supervisors, Ms. Cox posture for creating a new position changed.  Prior to the filing of the complaint, Ms. Cox made statements that she would create a position to reflect Ms. Soublet's extensive duties; Ms. Cox now said she was going to create a position for the Agency. Ms. Soublet was fully prepared to compete for the proposed newly created positions because her years of service under the County's merit system rules would factor positively in her application and score for the new position. Further, no one else within or outside SSA has the years of experience doing her specific duties and responsibilities. (S. Soublet Dec.¶67)

A benefit might also accrue to a property interest in the procedures for promoting an employee. *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir.1984). A protected interest exists "if the procedural requirements are intended to be a 'significant substantive restriction'" on Defendant Cox's decision-making. *See Id.* at 820. A property interest exists in a promotion where there exists a "binding assurance of the forthcoming promotion." *Nunez v. City of Los Angeles,* 147 F.3d 867, 873 (9th Cir. 1998). This Court must deny Defendants' motion as the evidence proves triable issues of fact for the jury.

## VI.    GENUINE ISSUES OF MATERIAL FACTS EXIST SUPPORTING PLAINTIFF'S LIBERTY INTEREST IN HER GOOD NAME AND REPUTATION

Under the stigma-plus doctrine, a party holds a constitutionally protected interest in his or her good name, reputation, honor, or integrity. *Wisconsin v. Constantineau,* 400 U.S. 433, 437(1971). To make out a viable due process claim based on loss of reputation, plaintiff must show stigma to reputation plus deprivation of an additional right or interest. *Paul v. Davis*, 424 U.S. 693, 701 (1976) (reputational damage such that "a stigma or other disability" prevents his or her "freedom to take advantage of other employment opportunities); *Wheaton v. Webb-Petett*, 931 F.2d 613, 617 (9th Cir. 1991)(accusations result in damage to an employees community standing). In its relationship to a federally protected right, if a workplace action subjects an employee to stigma and a negative reputation among coworkers, it could dissuade a reasonable worker from disclosing discrimination which thereby invokes a liberty interest. *Gordon v. City of N.Y.,* 2015 U.S. Dist. LEXIS 70915, 2015 WL 3473500, at *12 (S.D.N.Y. June 2, 2015); *Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir. 1991)(injury to reputation was "inflicted in connection with a federally protected right"). Our law elucidates and protects ancient accumulated wisdom: "*A good name is rather to be chosen than great riches, and loving favor rather than silver and gold."* (Proverbs 22:1KJV)

### A.    The evidence proves there is a dispute of material fact that exists with regard to Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Liberty Interest (Fourth Cause of Action).

Here, Defendant Cox's admitted disclosures to Simmons fall squarely within the kind and quality of accusations that have been deemed to rise to a level of invoking a reputational liberty

interest. The fact that the Ms. Simmons repeated Defendant Cox's statements in front of other individuals only added to Ms. Soublet's discomfort and humiliation, mental and emotional distress: "I felt that Ms. Cox had in an instance ruined the reputation that I had taken over twenty-five (25)years to build." (S. Soublet Dec.¶72)

Continuing with the destruction of Ms. Soublet's reputation, Ms. Cox gave Ms. Soublet a formal letter of reprimand. (Bonner Dec Ex 1: Cox Depo. 74:9-75:18, 101:7-102:8).  Ms. Cox chose not to use a lesser form of discipline, which she had the discretion to do. (Bonner Dec Ex 1: Cox Depo. 102:9-103:5). Following the finding that Ms. Cox violated county policy by discussing Ms. Soublet's confidential personal matters, Ms. Cox initiated further disciplinary action against Ms. Soublet by fabricating a complaint by Ms. Marzella Cleveland, a service provider.  (Bonner Dec Ex 1: Cox Depo. 141:17-142:19, 144:20-161:8). After initially completing an investigation into Ms. Cleveland's concerns on or about February 21, 2019, the investigation was re-opened for the sole purpose of making a negative finding against Ms. Soublet.  (Bonner Dec Ex 1: Cox Depo. 148:17-152:2).

The underlying incident occurred in December 2018, when Ms. Marzella Cleveland, a partner who assisted with a county program for veterans, was present at the County's San Pablo office when a County employee accused her trespassing and called the Sheriff's Department. (Bonner Dec Ex 1: Cox Depo. 152:3-153:22).  Ms. Soublet was not present in the building or in Oakland, at the time of the interaction and the woman who called the Sheriff's department was not Ms. Soublet's direct report.  (S. Soublet Dec.¶15) These meritless reprimands can reasonably be construed as egregious accusations of "dishonesty" that could otherwise "cripple an individual's ability to earn a living." *Hyland,* 972 F.2d at 1142. Defendants' accusations are by no means mere accusations of incompetence but directly infer "dishonesty" which implicates a liberty interest. As the injury to Plaintiff's reputation was inflicted in connection with a federally protected right, i.e., first amendment right and/or property right in public employment, *Crowe v. County of San Diego*, 608 F.3d 406, 444 (9th Cir. 2010) defendants accusations resulted in a diminishment of her property right by receiving a letter of reprimand and being refused promotional opportunities. These are triable facts for a jury regarding whether Defendants

1  violated Ms. Soublet's Liberty Interest and because this Court is presented with disputed facts,

2  Defendants' motion must be denied.

3  **VII.    GENUINE ISSUES OF MATERIAL FACTS EXIST ESTABLISHING THAT**

4  **DEFENDANT COUNTY ENGAGED IN DELIBERATE INDIFFERENCE**

5          In order to succeed on a claim of supervisory liability, plaintiff's evidence must show that

6  the Defendant County conducted itself in a way that establishes deliberate indifference to

7  Defendant Cox's actions and that there existed a close relationship between the supervisorial

8  indifference and the violation of Plaintiff's constitutional rights. *Hernandez v. Gates*, 100

9  F.Supp.2d 1209, 1218 (C.D. Cal 2000). The Ninth Circuit has held that a municipality's failure

10  to fire or reprimand in light of "a blatantly unconstitutional course of treatment" can serve as

11  "persuasive evidence of deliberate indifference encouraging such official misconduct." *Henry v.*

12  *County of Shasta*, 132 F.3d 512, 520 (9th Cir. 1997). In *Henry*, the Ninth Circuit held that "when

13  a county continues  to turn a blind eye to severe violations of . . . constitutional rights -- despite

14  having received notice of such violations -- a rational fact finder may properly infer the existence

15  of a previous policy or custom of deliberate indifference." *Id.*

16          Deliberate indifference may be inferred where 'the need for more or better supervision to

17  protect against constitutional violations was obvious,' but the policymaker 'fail[ed] to make

18  meaningful efforts to address the risk of harm to plaintiffs. *Floyd v. City of New York*, 959

19  F.Supp.2d 540, 564(S.D.N.Y 2013).

20          **A.  The Evidence Herein Proves There Is A Dispute Of Material Fact That Exists**
21              **With Regard To Plaintiff's Section 1983 Claim For Violation Of The**
22              **Fourteenth Amendment – Retaliation (Fifth Cause Of Action)**

23          Here*,* Defendant Cox admitted that she informed Supervisor Wilma Chan that she had

24  shared Ms. Soublet's confidential information.  Cox Depo.:68:17 – 25 Thus, *the County was*

25  *apprised of Cox's hostile and retaliatory conduct such that Plaintiff's constitutional rights (1st*

26  *Amendment, 4th Amendment) rights were violated, but failed to take any effective corrective*

27  *action to protect Ms. Soublet.* Kristen Spanos, the former Agency Deputy Director, filed a

28  complaint with the E.E.O.C, making allegations of discrimination and retaliation similar to those

Ms. Soublet made in her April 22, 2017 complaint to the Board of Supervisors.  During the

course of the investigation of Ms. Spanos' complaint, Ms. Cox discussed Ms. Spanos' complaint with Ms. Soublet. Ms. Cox informed Ms. Soublet that she had spoken with Scott Haggerty, a member of the Board of Supervisors, regarding Ms. Spanos' complaint and Mr. Haggerty stated to Ms. Cox: "You are not going anywhere!"  "She (referring to Ms. Spanos) needs to find something else." What was telling about this comment was the timing.  The investigation into Ms. Spanos' complaint had not concluded, and the Supervisor had already made a decision regarding the outcome and its impact on Ms. Cox.  Ms. Soublet concluded from this comment that regardless of the investigative findings and how Ms. Cox treated her subordinates, she would suffer no repercussions at the hands of her bosses, the Board of Supervisors. (S. Soublet Dec.¶73)

A similar discrimination and retaliation complaint had been filed against Ms. Cox by Mr. Don Edwards.  No actions were taken by the Board of Supervisors in response to his complaint. Ms. Soublet's complaint is the third complaint filed against Ms. Cox because of her management practices and her treatment of employees under her supervision.  In spite of all of these complaints, the Board of Supervisors has not taken any action.  The Board of Supervisors' failure to act allows Ms. Cox to continue to with engaged in unlawful employment practices impunity as she suffers no consequences for her actions. This proved that the Board "municipality's failure to fire or reprimand in light of "a blatantly unconstitutional course of treatment" can serve as "persuasive evidence of deliberate indifference encouraging such official misconduct." *Henry supra*, 132 F.3d at 520. The Board's deliberate indifference also reflected in, and encouraged, Defendant Cox's continuing retaliatory conduct, imposing on Ms. Soublet's groundless Letters of Reprimand. The Board's deliberate indifference, therefore, ratified the unlawful actions taken by Ms. Cox toward Ms. Soublet. (S. Soublet Dec.¶75) Since the evidence proves a dispute of material fact that exists with regard to Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Retaliation (Fifth Cause of Action), Defendants' motion must be denied.

**A. The Evidence Herein Proves There Is A Dispute Of Material Fact That Exists With Regard To Plaintiff's Section 1983 Claim For Violation Of The Fourteenth Amendment – Ratification (Six Cause Of Action)**

Ms. Cox admitted she spoke with several members of the BOS regarding Ms. Soublet's complaint both before and after the independent investigation found her guilty of violating Ms. Soublet's privacy rights. Defendant Cox admitted to the members of the BOS that she shared with a non-employee, Ms. Simmons, Ms. Soublet's confidential employment, personnel and personal information inappropriately and discussed with members that the independent investigation had found that sharing confidential information was inappropriate in violation of County policies," (Cox Depo. 57:9,58-65, 68-72) Defendant Cox discussed with BOS members Nate Miley, Wilma Chan, Richard Valle, Scott Haggerty as well as County administrator, Ms. Muranishi. Other than the "training" by Counsel Donna Zeigler, the BOS failed to take any effective corrective remedial action to prevent Cox from further violations of employees constitutional and inalienable rights. Hence, Defendants' motion must be denied because this evidence shows dispute of material fact that exists with regard to Plaintiff's Section 1983 Claim for Violation of the Fourteenth Amendment – Ratification (Six Cause of Action)

**B. The Evidence Herein Proves There Is A Dispute Of Material Fact That Exists With Regard To Plaintiff's Section 1983 Claim For Violation Of The Fourteenth Amendment –Negligent Hiring –Training 42 U.S.C. § 1983 (Seventh Cause Of Action)**

Defendant Cox admits she was required to submit to "training on confidentiality" , but she "never thought of it as discipline". (Cox Depo. 26:11-23, 24-27) Cox started the training "early 2018". January 18, 2018, early 2018, is the date Defendant Cox parachuted on to Ms. Soublet the retaliatory basely Letter of Discipline. Cleary, the training was insufficient to deter Defendant Cox from unlawful employment practices. Defendant Cox was experiencing existential "hurt feeling" resulting from being compelled to attend training for a violation of county policy, a finding that would remain in her file for five (5) years, at the very time she imposed the Letter of Discipline on Ms. Soublet. (Cox Depo.:39:13-19) Trainer, County Counsel Donna Zeigler  cited "codes" during the training to Defendant Cox, but she does not remember what codes were cited. (Cox Depo. 26:11-23, 24-28) Defendant Cox admits the county provides an on-line course on

1    holding employee information confidential and she "may" have taking the online course early in
2    2017 . (Cox Depo.: 30:23, 31, 32:1-7) Defendant Cox later admitted that she did consider the
3    training discipline and that the codes cited during the training pertained to the requirement to keep
4    employees employment information confidential. (Cox Depo.: 38) Defendant Cox also admitted
5    that before the training with County Counsel Ziegler, she had not gone through training to that
6    extent. She confirmed that she reports to the Alameda County Board of Supervisors. (Cox Depo.:
7    54) Defendant Cox testified that Simmons if not an employee of the county and is her very good
8    friend, sharing lunches, dinners, visiting each other homes, and socializing together. (Cox Depo.:
9    13,14 ) Defendant Cox has worked for the county since at least 1999 as a Child Welfare Worker,
10   Child Welfare Supervisor, Assistant Agency Director, A Division Director, A Program Manager,
11   And A Child Welfare Supervisor. She became Director of SSA in 2011. The BOS has been her
12   employer during her tenue with the county. Yet, she had never had training to the extent she had
13   with County Counsel Ziegler. (Cox Depo.: 13-17:15) This is evidence of negligent training and
14   supervision, requiring Defendants' motion for summary judgment to be denied.

15   **VIII.    QUALIFIED IMMUNITY IS FORECLOSED WHERE A REASONABLE**
16   **DIRECTOR IN DEFENDANT COX'S SHOES WOULD HAVE KNOWN**
     **THAT RETALIATING AGAINST A PUBLIC EMPLOYEE FOR HER**
17   **SPEECH VIOLATED THAT EMPLOYEES FIRST AMENDMENT RIGHTS**

18   "Qualified immunity fails to attach when an official's conduct violates clearly established
19   statutory or constitutional rights of which a reasonable person would have known." *White v.*
20   *Pauly*, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017). To determine that a right is clearly
21   established, a court "must identify precedent as of [the date of the alleged violation] that put [the
22   defendant] on clear notice" that his or her actions were unconstitutional. *S.B. v. County of San*
23   *Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017).  However, courts do not require a case directly on
24   point, but existing precedent must have "placed the statutory or constitutional question beyond
25   debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741(2011); *Greisen v. Hanken* 925 F.3d 1097, 1108-
26   1109(9th Cir. 2019).

27        At the time that Plaintiff incurred adverse employment actions, it was well settled that a
28   public employer could not retaliate against an employee for engaging in constitutionally

1   protected conduct.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle* (1977) 429 U.S. 274, 283.

2   As of 2016, the Ninth Circuit had firmly established that "a reasonable official would . . . have

3   known that a public employee's speech on a matter of public concern is protected if the speech is

4   not made pursuant to her official job duties, even if the testimony itself addresses matters of

5   employment." *Greisen v. Hanken* 925 F.3d 1097, 1112-1113(9th Cir. 2019); *see also, Lull v. Cty.*

6   *of Sacramento*, 2019 U.S.Dist.LEXIS 154417, at *13 (E.D.Cal. Sep. 10, 2019)(it is well

7   established that an otherwise lawful government action may nonetheless be unlawful if

8   motivated by retaliation for having engaged in activity protected under the First Amendment);

9   *Brown v. City of Caldwell* 2012 U.S.Dist.LEXIS 35314, at *22) (D.Idaho Mar. 14, 2012), *citing*,

10  *Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir. 2009)(it is well established that the government

11  may not abuse its position as employer to stifle the First Amendment rights of its employees).

12      Similarly, it is both well established that a First Amendment retaliation claim may be

13  based on retaliatory speech when that speech is part of a campaign of harassment designed to

14  burden the plaintiff's protected expression, *Id., citing Allen v. Scribner*, 812 F.2d 426, 429(9th

15  Cir. 1987) and that retaliatory speech may serve as the basis for a First Amendment retaliation

16  claim when it "intimates that some form of punishment or adverse regulatory action would

17  follow." *Id., citing Brodheim v. Cry,* 584 F.3d 1262, 1270 (9th Cir. 2009). Overall, the Supreme

18  Court has clearly held from as early as 1968 that public employees have a constitutional right to

19  speak on issues of public importance without fear of retribution. *Pickering v. Board of Educ*.,

20  391 U.S. 563, 574(1968). The Ninth Circuit has also stated that "as early as 1983, it could hardly

21  be disputed that an individual had a clearly established right to be free of intentional retaliation

22  by government officials based upon that individual's constitutionally protected expression."

23  *Hyland*, 117 F.3d at 410.

24      Here, a reasonable Director overseeing a large administrative agency such as Defendant

25  Cox knew that she was engaging in violations of Ms. Soublet's privacy rights as evident by

26  admission there was on online course regarding protecting employees' rights which she "may

27  have taken early in 2011. Likewise, county policy against discrimination in the work place is

28  common knowledge for government supervisors, particularly, with such extensive work history

as Defendant Cox. She knows that retaliating against Ms. Soublet for engaging in speech whose content expressly addressed that Director's role in creating a hostile work environment was an unconstitutional intrusion into Ms. Soublet's clearly established First Amendment rights. *See, Chavez v. United States,* 683 F.3d 1102, 1110 (9th Cir. 2012)(where a Section 1983 claim is brought against a supervising official, qualified immunity is taken into account, and a supervisor faces liability only where it would be clear to a reasonable supervisor that his conduct was unlawful in the situation he confronted). Ms. Soublet's genuine issues of facts wholly preclude Defendant's reliance on a mistake of law or fact as objectively reasonable under the circumstances in order to evade liability. *See Pearson v. Callahan,* 555 U.S. 223, 129 S. Ct. 808, 815(2009).

Lastly, for purposes of summary judgment, if "there is a material dispute as to the facts regarding what the [supervisor] actually did, the case must proceed to trial." *LaLonde v. Cnty. of Riverside,* 204 F.3d 947, 953 (9th Cir. 2000). Thus, based upon Plaintiff's clearly established right and the factual context and circumstances set forth herein, qualified immunity is patently unavailing.

### A. The evidence herein proves there is a dispute of material fact that Plaintiff's claim for punitive damages against Cox and this claim should not be dismissed.

DEFENDANT COX"S illegal acts of disclosing MS. SOUBLET"S confidential personnel information coupled with the raw, unadulterated acts, of retaliation were malicious, oppressive and fraudulent, warranting the impositions of punitive damages under California Civil Code §3294. These predicate facts for the imposition of punitive damages are questions for the jury. Defendant motion must be denied.

### CONCLUSION

For all the forgoing reasons, Defendants' Motion for Summary Judgment must be denied.

DATED: October 16, 2019                     RESPECTFULLY SUBMITTED,
                                                          **LAW OFFICES OF BONNER & BONNER**


                                                 By   /s/ *Charles A. Bonner*
                                                          CHARLES A. BONNER
                                                          ATTORNEY FOR PLAINTIFF